**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Nathaniel POPE, Defendant-Appellant.**

**No. 77–5105.**

United States Court of Appeals, Sixth Circuit.

Argued June 9, 1977.

Decided Sept. 2, 1977.

Donald N. Krosin, Cleveland, Ohio, for defendant-appellant.

Frederick M. Coleman, U. S. Atty., Cleveland, Ohio, Robert S. Stone, Shaker Heights, Ohio, for plaintiff-appellee.

Before PHILLIPS, Chief Circuit Judge, and CELEBREZZE and PECK, Circuit Judges.

CELEBREZZE, Circuit Judge.

Appellant stands convicted by a jury on two counts of possessing a controlled substance, heroin and methadone, with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1970).[1] Appellant was arrested by agents of the Drug Enforcement Administration (DEA) at Hopkins International Airport in Cleveland, Ohio, while in possession of approximately 330.24 grams of heroin and approximately 475 mililiters of methadone. Appellant raises a number of issues on appeal, the most significant of which are the District Court's refusal to suppress the seized evidence, failure to consolidate the separate counts of the indictment, and failure to instruct the jury on an essential element of an offense under 21 U.S.C. § 841(a)(1). Although the first two contentions are without merit, we conclude that the failure to instruct the jury on the "intent to distribute" element of § 841(a)(1) requires reversal.

On August 19, 1976, Special Agents William P. Johnson and Frank J. Magoch, Jr., of the DEA were assigned to the Cleveland airport to monitor incoming and outgoing flights to cities known to be drug distribution centers. Agent Johnson observed Appellant among passengers disembarking from a Los Angeles flight. One month earlier, on July 21, Appellant and a companion had aroused Agent Johnson's suspicions as they boarded a flight to Los Angeles. On that occasion, Agent Johnson observed the two men purchase one-way tickets to

---

1. (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

 (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

21 U.S.C. § 841(a)(1), (2) (1970).

Los Angeles using cash taken from large rolls of bills which each was carrying. Appellant had a brown briefcase and his companion carried a brown paper sack from which he removed money to pay his fare. Agent Johnson learned from the ramp agent that the airline tickets were issued in the names of N. Pope and C. Saunders. Agent Johnson made inquiry and obtained a photograph of Saunders, Appellant's companion. DEA agents maintained surveillance on incoming Los Angeles flights for the next two days but they did not see either of the two men return.

After Agent Johnson noticed Appellant disembark on August 19, he and Agent Magoch followed Appellant down the airport concourse. The evidence shows that the Appellant appeared nervous and looked about several times, glancing at either Agent Johnson or Agent Magoch who were following him. The agents separated, with Agent Magoch continuing to keep Appellant under surveillance while Agent Johnson preceded them outside the terminal and on to the street. Agent Johnson identified himself to a uniformed police officer who was on duty outside the terminal and requested assistance. After Appellant left the terminal, Agent Johnson approached him and displayed his credentials. Immediately, Appellant bolted past the agent and policeman and ran into a nearby construction site. Agent Johnson gave chase shouting after Appellant that he was a federal agent. As Agent Johnson drew closer, Appellant either swung or threw his briefcase at the pursuing agent who then drew his service revolver. Appellant ran toward a storm sewer and, within view of both agents, withdrew a white bag from his coat, dropped down to the sewer grating, and stuffed the bag into the sewer. He was taken into custody and Agent Magoch retrieved a white airsickness bag from the

sewer. Inside the airsickness bag were two plastic bags filled with a brown substance which proved to be heroin. Appellant was placed under arrest. The agents opened the briefcase and found that it contained a soft drink bottle filled with a pink liquid which proved to be methadone, a mortar and pestle, an electric blender and a jar of lactose. Appellant had $528 in cash in his pants pockets. Two one-way airline ticket stubs, Los Angeles to Cleveland, in the names of M. Johnson and J. Johnson, bearing a travel date of August 19, 1976, were in Appellant's coat pocket. In the briefcase, Agent Johnson found two additional ticket stubs, Los Angeles to Cleveland, in the names of A. Jones and E. Jones dated July 24, 1976.[2]

Defense counsel moved to suppress the seized evidence and the motion was overruled. At trial, DEA chemist John Meyers testified that he had analyzed the evidence and found that the brown substance was 330.24 grams of heroin at 23% purity with manitol as dilutant; the surfaces of the mortar and pestle were coated with heroin and manitol; powder in the blender proved positive for heroin; and the pink substance in the bottle was 475 mililiters of liquid containing methadone.

Recently, this Court has reviewed a number of cases involving warrantless searches of airline passengers by DEA agents. *See, e. g., United States v. Lewis*, 556 F.2d 385 (6th Cir. 1977); *United States v. Gill*, 555 F.2d 597 (6th Cir. 1977); *United States v. Craemer*, 555 F.2d 594 (6th Cir. 1977). A majority of these cases have concerned the DEA's use of a "drug courier profile", which is a loosely formulated list of characteristics believed to be common to persons using airports for narcotics traffic. *Compare, United States v. McCaleb*, 552 F.2d 717, 719–20 (6th Cir. 1977), and *United States v. Craemer, supra* at 595.[3] Although

---

**2.** The Government in its brief notes that Appellant returned to Cleveland on July 24th. This date appears to be substantiated by ticket stubs found in Appellant's briefcase bearing the name "Jones". Since the agents were not aware of the July 25 flight date and also were not aware that Appellant had used aliases on

flights other than on July 21, these facts may not be considered in evaluating the agents' conduct.

**3.** In *United States v. McCaleb*, 552 F.2d at 719–20, we mentioned the profile used by Detroit DEA agents:

not admitted in the Government's brief, it is obvious that the agents in this case were acting pursuant to a drug courier profile in singling out Appellant for surveillance. Accordingly, analysis of the search and seizure in this case properly begins with a discussion of the growing body of case law in this Circuit on the DEA's use of drug courier profiles to spot possible narcotics traffickers.

As we stated in *United States v. McCaleb*, 552 F.2d at 720, satisfaction of a drug courier profile, in itself, does not establish probable cause. *See also United States v. Craemer, supra* at 596. The agents must be able to point to additional articulable facts which indicate that the suspect is engaged in criminal activity. *United States v. Hunter*, 550 F.2d 1066, 1069–70 (6th Cir. 1977). Although meeting the profile does not establish probable cause, facts known to the agents which correspond to characteristics in the profile may be considered along with information obtained from other sources in determining that the agents did have probable cause to believe that an offense is being or has been committed. *United States v. Gill, supra* at 599. *Compare, United States v. Prince*, 548 F.2d 164 (6th Cir. 1977), and *United States v. Craemer, supra* at 597.

Even if the facts known to the agents do not amount to probable cause, the agents may be permitted to make a limited investigative stop of suspicious individuals under the "stop and frisk" doctrine announced in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry* the Supreme Court held that a law enforcement officer is entitled to stop an individual on the street to investigate suspicious behavior if the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." 392 U.S. at 21, 88 S.Ct. at 1880. The officer may not rely on "mere suspicion" or a "hunch" to justify the stop, but due consideration is afforded specific reasonable inferences the officer is entitled to draw in light of his law enforcement experience. *Id.* at 27, 88 S.Ct. 1868. Later cases have dubbed the lesser standard of knowledge required for a *Terry* stop "reasonable suspicion" and have gauged the reasonableness of particular investigative stops by striking "a balance between the public interest [behind the investigation] and the individual's right to personal security free from arbitrary interference from law officers." *United States v. Brignoni—Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975). Where the public interest served by the officer's investigation is great and the intrusion on individual privacy is small, investigative stops of limited duration and "reasonably related in scope to the justification for their initiation" have been upheld. *United States v. Brignoni—Ponce*, 422 U.S. at 881, 95 S.Ct. at 2580, *citing Terry v. Ohio*, 392 U.S. at 29, 88 S.Ct. 1868.

The "drug courier profile" is a rather loosely formulated list of characteristics used by Detroit DEA agents to indicate "suspicious" persons. These characteristics include: (1) the use of small denomination currency for ticket purchases; (2) travel to and from major drug import centers, especially for short periods of time; (3) the absence of luggage or use of empty suitcases; (4) nervousness, and; (5) use of an alias. DEA agents testified that the presence of a number of these characteristics suggests that the person observed may be carrying contraband drugs. During the time period of the instant arrests, this profile was not written down, nor was it made clear to agents exactly how many or what combination of the characteristics needed to be present in order to justify an investigative stop or an arrest.

The Cleveland DEA agents followed a similar profile in *United States v. Craemer, supra* at 595:

The courier profile lists a number of characteristics believed to be common to persons using airports for narcotics traffic. Among the characteristics included in the profile are that the individual purchases a round trip ticket to various locations in the nation known as drug distribution centers, including Miami, Florida, New York, New York, Los Angeles, California, and San Juan, Puerto Rico, to return the same day or within a short period of time; the tickets are purchased with cash using bills of small or large denominations; the individuals either check no luggage or they check empty bags; they often use aliases; and they behave in a suspicious or nervous manner.

■ A threshold question we must address is whether the facts before us define an investigative stop within the meaning of *Terry*. Agent Johnson had just approached Appellant and flashed his credentials when Appellant fled. *Terry* states that the Fourth Amendment becomes relevant to an encounter between police and citizen only upon a "seizure of the person". 392 U.S. at 16, 88 S.Ct. at 1877. In *Terry* the Supreme Court held that a "seizure of the person" occurs "whenever a police officer accosts an individual and restrains his freedom to walk away." *Id*. This does not require an actual physical seizure, so long as it is apparent from the circumstances that the individual was not free to ignore the officer and proceed on his way. *See, e. g., Adams v. Williams*, 407 U.S. 143, 148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Sibron v. New York*, 392 U.S. 40, 63, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1962); *Terry v. Ohio*, 392 U.S. at 19 n. 16, 88 S.Ct. 1868. On the other hand, the Supreme Court noted in *Terry* that "not all personal intercourse between policemen and citizens involves 'seizures' of persons". 392 U.S. at 19 n. 16, 88 S.Ct. at 1879. Whether *Terry* considerations come into play in evaluating the officer's conduct depends on the totality of the circumstances surrounding the encounter.

■ Here, Agent Johnson was obviously intending to make a *Terry* stop when he approached Appellant to "talk" with him. This intention was thwarted, however, by Appellant's flight at the moment the agent displayed his credentials. If the agent had actually succeeded in effecting an investigative stop by detaining Appellant for questioning at the time of the initial intrusion, the stop would have been invalid because the facts then known to the agent did not amount to "reasonable suspicion" that Appellant was involved in criminal activity. *See United States v. Cupps*, 503 F.2d 277, 281–82 (6th Cir. 1974). All that Agent Johnson knew of Appellant's activities on August 19 was that Appellant had disembarked from a Los Angeles flight and had proceeded down the airport concourse looking back nervously at the two plainclothes agents following him. This conduct was entirely consistent with innocent behavior. Agent Johnson also knew that on July 21 Appellant and his companion had purchased one-way tickets to Los Angeles using cash taken from a large roll of bills.[4] However, satisfaction of a DEA drug courier profile does not necessarily satisfy the *Terry* requirement that the agent be able to point to "specific and articulable facts" which warrant the intrusion. *See United States v. McCaleb*, 552 F.2d at 720. If Agent Johnson had carried out his intentions and had stopped Appellant, any evidence obtained thereby would have had to be suppressed as the fruit of an invalid *Terry* stop. *See Manning v. Jarnigan*, 501 F.2d 408 (6th Cir. 1974). But that is not what occurred. Instead, Appellant broke into a run at the moment that Agent Johnson identified himself as a DEA agent. From that point, Appellant no longer conducted himself as would an innocent passerby.

■ We conclude that Appellant's flight in the face of a clear showing of lawful authority supplied the agent with grounds to reasonably suspect that Appellant was engaged in criminal activity. Flight invites pursuit and colors conduct which hitherto has appeared innocent. Under the circumstances, the agent acted reasonably in pursuing Appellant.[5] We wish

---

**4.** The Government in its brief states that the agents discovered that Appellant's companion was a "known drug dealer" and that this fact justified the agent's attempt to stop Appellant outside the terminal. There is nothing in the record to support this allegation. We also did not consider Appellant's probation report which was improperly inserted as an appendix to the Government's brief.

**5.** If the agents had apprehended Appellant without further incident, the stop and inquiry would have had to be "reasonably related in scope to the justification for their initiation," in this case the flight from the agents. *Terry v. Ohio*, 392 U.S. at 29, 88 S.Ct. at 1884. A brief detention for questioning would be a reasonable response to Appellant's flight from the agents, particularly in light of the serious public interest in stemming illegal drug traffic balanced against the minimal intrusion of a brief investigative stop. *See United States v. Brig-*

to emphasize the narrowness of this holding. We do not condone, nor do we wish to encourage, investigative stops of citizens on a public street on facts which do not meet the standards in *Terry.* All that we hold today is that flight from a clearly identified law enforcement officer may furnish sufficient ground for a limited investigative stop.[6] *See United States v. Vasquez,* 534 F.2d 1142, 1145 (5th Cir. 1976); *United States v. Rundle,* 461 F.2d 860, 863–64 (3d Cir. 1972). *Accord, City of St. Paul v. Vaughn,* 237 N.W.2d 365 (Minn.1975). *Cf. United States v. Williams,* 314 F.2d 795, 798 (6th Cir. 1963). However, flight from a law enforcement officer alone does not establish probable cause, although it is a relevant factor to consider. *See United States v. Vasquez,* 534 F.2d at 1145. Appellant's conduct after he fled gave the agents ample cause to arrest him. When he swung or threw his briefcase at the pursuing agent, the agent had probable cause to arrest him for assaulting a federal officer in the performance of his duty, a violation of 18 U.S.C. § 111 (1970). After the assault, the agents observed Appellant stuff a white bag into the storm sewer. When the bag was retrieved and found to contain heroin, Appellant was arrested. The arrest was supported by probable cause and the seized evidence was properly introduced at trial.

 Appellant contends that the trial court should have consolidated the separate heroin and methadone counts into a single charge. He was convicted under 21 U.S.C. § 841(a)(1) which makes it a crime "for any person knowingly or intentionally to . . . possess with intent to . . . distribute . . . a controlled substance." Both heroin and methadone are listed as controlled substances in 21 U.S.C. § 812—heroin is a Schedule I controlled substance and methadone is a Schedule II controlled substance. We conclude that the possession of heroin and methadone represent separate offenses under the provisions of the Comprehensive Drug Abuse and Control Act of 1970, 21 U.S.C. §§ 801 *et seq.,* and that the district court did not err in refusing to consolidate the two counts of the indictment into a single charge or in sentencing Appellant separately on each conviction. *Cf. United States v. Valot,* 481 F.2d 22 (2d Cir. 1973).

 A more serious problem is raised by Appellant's contention that the district

---

noni—*Ponce,* 422 U.S. at 878–82, 95 S.Ct. 2574. Probable cause would of course be required before an arrest could be made. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

6. In *Wong Sun v. United States,* 371 U.S. 471, 482–84, 83 S.Ct. 407, 9 L.Ed.2d 441 (1962), the Supreme Court rejected a Government contention that a suspect's "flight [from a narcotics agent] justified an inference of guilt sufficient to generate probable cause." *Id.* at 483 n. 10, 83 S.Ct. at 415. The Court stressed that the agent affirmatively misrepresented his reason for being on the premises, that the misimpression engendered by the agent's ruse was not adequately dispelled before the suspect fled, that the agent was not certain he had the correct man, and that the agent's uninvited entry into the suspect's living quarters was unlawful. *Id.* at 483–84, 83 S.Ct. 407. Under these circumstances, the *Wong Sun* Court held that the suspect's flight and refusal to admit the agent into his bedroom was "ambiguous" conduct which "signified guilty knowledge no more clearly than did a natural desire to repel an apparently unauthorized intrusion." *Id.* at 483, 83 S.Ct. at 415. In this case, by contrast, Agent Johnson clearly identified himself as a federal agent as he approached Appellant on the street. He was accompanied by a uniformed officer. This is not a case, as in *Wong Sun,* where there could be any confusion about the agent's identity or the official nature of his mission. Flight under these circumstances was not ambiguous conduct. The agent was entitled to infer, in light of his law enforcement experience, that Appellant was engaged in some sort of furtive venture. In *Sibron v. New York,* 392 U.S. at 66, 88 S.Ct. at 1904, the companion case to *Terry,* the Supreme Court expressed similar sentiments in discussing flight and other furtive gestures as they relate to probable cause to arrest: ". . . deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea,* and when coupled with specific knowledge on the part of the officer relating the suspect to evidence of a crime, they are proper factors to be considered in the decision to make an arrest." Flight from an identified law enforcement officer may also satisfy the lesser standard required for an investigative stop. *See, e. g., United States v. Rundle,* 461 F.2d at 864.

court improperly instructed the jury on the elements required to prove a violation of 21 U.S.C. § 841(a)(1). Appellant claims that the instructions failed to inform the jury that it must find that controlled substances were possessed "with the intent to distribute" before an offense under § 841(a)(1) is proven. Since Appellant failed to make a specific objection before the jury retired, we review the adequacy of the instructions under the "plain error" standard of Rule 52(b) of the Federal Rules of Criminal Procedure. *See United States v. LaRiche,* 549 F.2d 1088, 1092 (6th Cir. 1977). The district court gave the following instruction on the essential elements of the offense:

Section 841(a)(1) of Title 21 of the United States Code provides in pertinent part as follows:

"Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance."

I shall now instruct you on the elements of the crime charged in the indictment. The three essential elements of the charges in the indictment are as follows:

1. The act or acts of possessing a narcotic drug controlled substance; to-wit, in this case, heroin, as charged in Count 1 of the indictment, and/or Methadone, as charged in Count 2 of the indictment.

2. Possessing such narcotic drug-controlled substance knowingly and intentionally.

3. Possessing such narcotic drug-controlled substances unlawfully.

The offenses and each of them are complete when the three elements above-stated have been proved by the evidence beyond a reasonable doubt.

A review of this portion of the instruction reveals that the district court did not include "intent to distribute" among the "three essential elements" that the Court said were required to prove a § 841(a)(1) violation. This was error. The "intent to distribute" is an essential element of § 841(a)(1). *See United States v. Clark,* 475 F.2d 240, 248–49 (2d Cir. 1973). The court's failure to instruct on "intent to distribute" was not cured by language in the instruction which stated that possession of a controlled substance must be with knowledge or intent. The "knowingly" and "intentionally" language in § 841(a) refers to the possessor's awareness that he is in possession of a controlled substance and not to his intention to distribute the substance sometime in the future. 21 U.S.C. § 841(a)(1) requires both general criminal intent and the specific "intent to distribute" before a violation is proven. *See United States v. Clark,* 475 F.2d at 248. As the Ninth Circuit correctly stated in *United States v. Jewell,* 532 F.2d 697, 698 (9th Cir. 1976), 21 U.S.C. § 841(a)(1) "is violated only if possession is accompanied both by knowledge of the nature of the act and also by the intent 'to manufacture, distribute, or dispense.'"

In determining the propriety of a jury instruction, the instruction must be viewed in its entirety, and a misstatement in one part of the charge does not require reversal if elsewhere in the instruction the correct information is conveyed to the jury in a clear and concise manner so that it is unlikely that an erroneous impression would remain in the minds of the jurors. *See generally United States v. Park,* 421 U.S. 658, 674, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975); *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). After reviewing the instructions in their totality, we are compelled to find that the instructions failed to adequately inform the jury that "intent to distribute" is an essential element of § 841(a). Although the instructions define "intent" in general terms along with other statutory definitions, nowhere in the instructions is either "distribution", *see* 21 U.S.C. § 802(11) (1970), or "intent to distribute" defined for the jury. At one point, the district court correctly instructed the jury that the intent or purpose to distribute could be inferred from certain evidence in the record. But this discussion was immediately followed by the court's reaffirmation that all that the

Government need prove beyond a reasonable doubt to convict Appellant are the three elements the court had previously listed. The court's reference to the three essential elements identified earlier in the instructions compounds the error of omitting to instruct on the "intent to distribute" element and detracts from the correct statement immediately preceding it. As we stated in *Smith v. United States,* 230 F.2d 935, 939 (6th Cir. 1956), "[t]he fact that one instruction is correct does not cure the error in giving another which is inconsistent with it." The court's instructions would permit the jury to convict Appellant for mere possession of a controlled substance which is not an offense under § 841(a)(1).[7] *Cf. United States v. White,* 390 F.2d 405, 407 (6th Cir. 1968). We believe that the instructions on intent were insufficient and created an erroneous impression in the minds of the jurors. *See United States v. Clark,* 475 F.2d at 248–49. Since "intent to distribute" is an essential element of § 841(a)(1), the Government retains the burden of proving that element beyond a reasonable doubt and on the basis of proper instructions. *See United States v. Clark,* 475 F.2d at 249. *See also United States v. Byrd,* 352 F.2d 570 (2d Cir. 1965). *Compare, United States v. Montiell,* 526 F.2d 1008, 1010–11 (2d Cir. 1975). *See generally Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). The failure to instruct on an essential element of an offense is "fundamental error," *United States v. King,* 521 F.2d 61, 63 (10th Cir. 1975), which cannot be cured by reference to the indictment or by reading the unexplained language of the statute to the jury. *See United States v. Natale,* 526 F.2d 1160, 1167 (2d Cir. 1975); *United States v. Bosch,* 505 F.2d 78, 82 (5th Cir. 1974). We conclude that the district court's failure to instruct on "intent to distribute", an essential element of an offense under 21 U.S.C. § 841(a)(1), was plain error and requires reversal of the convictions. The other issues raised by Appellant are without merit.

Reversed and remanded.

---

7. Simple possession of a controlled substance is a violation of 21 U.S.C. § 844(a) (1970), which carries a maximum term on the first offense of one year imprisonment and a $5000 fine. *Compare,* 21 U.S.C. § 841(b), (c).