928 F.2d 1134
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Henry MOORE, Jr., Defendant-Appellant.
 No. 90-3349.
 United States Court of Appeals, Sixth Circuit.
 March 28, 1991.
 
 On Appeal from the United States District Court for the Northern District of Ohio, No. 89-00076; White, J.
 
 N.D.Ohio
 
 1
 AFFIRMED.
 
 
 2
 Before RYAN and SUHRHEINRICH, Circuit Judges, and SILER*, District Judge.
 
 OVERVIEW
 PER CURIAM:
 
 3
 On March 7, 1989, defendant Henry Moore, Jr. was arrested by Detectives Zaller and Parkinson of the Cleveland, Ohio, Police Department's Narcotics Unit and, subsequently, was charged in a three count indictment with: possession of more than five (5) grams of cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1) (Count 1); possession of a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c)(1) (Count 2); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. Secs. 922(g)(1) and 924 (Count 3). On May 19, 1989, defendant filed a motion to suppress both physical evidence obtained as a consequence of his arrest and incriminating statements made at the time of his arrest and thereafter. After conducting a hearing on June 1, 1989, the court denied defendant's motion to suppress. Defendant was ultimately found guilty of all three counts charged in the indictment in a jury trial conducted on November 30, 1989.
 
 
 4
 Defendant appeals: (1) the district court's denial of his motion to suppress physical evidence obtained as a consequence of his arrest; (2) the district court's denial of his motion to suppress incriminating statements made at the time of his arrest and thereafter; (3) the court's limitation of defendant's cross-examination of two government witnesses; and (4) the charge given to the jury concerning the firearm possession offense, under 18 U.S.C. Sec. 924(c). For the reasons stated below, we affirm defendant's conviction.
 
 I. FACTS
 
 5
 In late February, 1989, Ohio narcotics Detectives Daniel Zaller and Thomas Parkinson received information from various sources, including police informants, the Cuyahoga Housing Authority, and telephone calls from private citizens, that a young black male driving a 1979 or 1980 red Mustang with fancy wheels and a car phone was making daily drug deliveries in the area of two public housing projects (the "King-Kennedy" projects) located in Cleveland, Ohio.
 
 
 6
 According to Detective Zaller's and Detective Parkinson's testimony at the suppression hearing, the following events led to defendant's arrest. On March 7, 1989, Detectives Zaller and Parkinson undertook surveillance of the area of the King-Kennedy projects in an unmarked police vehicle. At approximately four o'clock in the afternoon (4:00 p.m.), the Detectives spotted a young black male talking on a car phone in a red 1979 Mustang with chrome wheels. The Mustang was parked in front of East Technical High School which was located in the vicinity of the King-Kennedy projects. As the Detectives pulled their car up behind the Mustang, two young women, who had been leaning on the passenger side of the vehicle, departed.
 
 
 7
 Detective Zaller approached defendant and asked him for identification, which defendant provided. Detective Zaller also asked defendant if he was "wanted by anyone." Defendant, who appeared nervous, indicated that he might be wanted by his probation officer for failing to timely report. Defendant stated that he was on probation for sexual assault and, thereafter, accompanied Detective Zaller to the police car so the information could be verified. Defendant then consented to Detective Parkinson's request to search the Mustang. After finding nothing incriminating on the inside of the automobile, Detective Parkinson asked defendant for the keys to the trunk. Defendant responded by pushing Detective Zaller and running down the street. Detective Zaller chased defendant and brought him back to the police car. Defendant ran from the Detectives a second time before being handcuffed and arrested.
 
 
 8
 A short time after defendant was placed in the police car, Detective Parkinson obtained the keys to the Mustang's trunk which contained twenty-two separately packaged bags of cocaine powder, a fully loaded semi-automatic weapon and handgun with the serial numbers filed off, ammunition, and $4,400 cash. The semi-automatic weapon was loaded with eleven live rounds.
 
 
 9
 Detective Zaller read defendant his Miranda[1] rights, which defendant waived, before questioning him concerning the contents of the trunk. Defendant stated that a man named "J.J." from L.A. gave him the bag with the cocaine and the weapon at an elementary school around the corner. Defendant further stated that he was to deliver the items to another male in a nearby parking lot, for which, defendant would be paid $200.
 
 
 10
 On March 9, 1989, defendant provided a written statement to the police which contained an inconsistent explanation for the items found in his trunk from the one offered to Detective Zaller at the time of his arrest. In the statement, defendant indicated that the bag found in the trunk of his 1979 red Mustang, which contained money and drugs, belonged to a drug dealer named James L. Green (a.k.a. "John"). Defendant indicated that he was supposed to hold the bag until John got back from Detroit. Although defendant indicated that the guns also belonged to John, they were eventually traced to a federally licensed firearms dealer who provided documentation indicating that defendant, not John, bought the weapons in 1988.
 
 
 11
 Defendant's testimony at the suppression hearing was different than that offered by Detectives Zaller and Parkinson in several respects. First, defendant testified that the Detectives required him to answer questions and intimidated him by show of authority. For instance, defendant testified that one of the Detectives displayed his holstered gun upon approaching. Defendant also testified that he never consented to the search of the inside of his car or the trunk. Defendant also denied being read his Miranda rights prior to being questioned by Detective Zaller concerning the contents of the trunk.
 
 II. ANALYSIS
 A.
 
 12
 Defendant's first argument on appeal is that the district court erred in failing to grant his motion to suppress the weapons, the cocaine, and the $4,000 seized from the trunk of his car. In support of his argument, defendant contends that Detectives Parkinson and Zaller: (1) lacked the necessary objective justification to "stop" or "arrest" defendant; and (2) lacked "probable cause" to conduct an "automobile search" of his car. We find defendant's arguments to be without merit.
 
 
 13
 Defendant initially argues that the Detectives lacked a reasonable suspicion to "stop" him in front of the King-Kennedy projects. The government argues that the police encounter was based on defendant's consent and, thus, that his constitutional rights were not implicated until the time of his arrest.
 
 
 14
 Law enforcement officials must have an objective justification only for those police-citizen encounters which rise to the level of a "seizure." See Reid v. Georgia, 448 U.S. 438, 440 (1980). A "seizure" occurs only when the officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968). Therefore, not every police-citizen encounter rises to the level of a seizure under the fourth amendment. For instance, the Supreme Court has repeatedly made clear that a police officer may approach a person and request to speak to him without running afoul of the fourth amendment. Florida v. Royer, 460 U.S. 491, 497 (1983); see also United States v. Collis, 699 F.2d 832, 834-35 (6th Cir.), cert. denied, 462 U.S. 1119 (1983). Further, the fact that the officer identifies himself as a police officer, without more, does not convert an encounter into a seizure requiring some level of objective justification. Royer, 460 U.S. at 497 (citing United States v. Mendenhall, 446 U.S. 544, 555, reh'g denied, 448 U.S. 908 (1980)).
 
 
 15
 Defendant testified that he did not believe that he was free to terminate the discussion with the Detectives because one of the officers displayed a holstered gun and, further, because all of the Detectives' acts required a compulsory, not a permissive, response. In contrast to defendant's testimony, Detectives Zaller and Parkinson testified that their approach was non-threatening, that defendant consented to their requests to speak with them, and that they did not restrain his liberty in any way until after he attempted to flee. The district court discounted defendant's version of the events leading to his arrest in favor of the testimony offered by the Detectives. Based on the record as a whole, and especially with regard to defendant's uncertainty regarding the details of his arrest and his inconsistent explanation for the illegal items found in his car, we cannot say that the court's credibility determination was "clearly erroneous." Anderson v. Bessemer City, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."); United States v. Rose, 889 F.2d 1490 (6th Cir.1989). Thus, we find no error in the district court's conclusion that defendant's encounter with Detectives Zaller and Parkinson was consensual prior to the time of his arrest.
 
 
 16
 Having determined that defendant's fourth amendment rights were first implicated at the time of his arrest, we must now decide whether the arrest was supported by probable cause. The element of probable cause is satisfied if the government shows that there was a "fair probability" that the defendant had committed or was about to commit a crime. See United States v. Sokolow, 490 U.S. 1, ----, 109 S.Ct. 1581, 1585 (1989). A finding of probable cause by the district court will not be set aside unless "clearly erroneous." See United States v. Garcia, 866 F.2d 147, 151 (6th Cir.1989).
 
 
 17
 At the time defendant was chased by Detective Zaller, handcuffed, and placed under arrest, the Detectives were aware of the following incriminating factors: (1) the area of the King-Kennedy Projects was known by the Detectives to be an area of prolific drug trafficking; (2) defendant fit the description provided to the Detectives by various independent sources of an individual dealing drugs in the area of the King-Kennedy Projects;[2] (3) defendant volunteered information regarding a previous felony which he had committed and for which he was delinquent in contacting his probation officer; (4) defendant was wearing a "beeper" which Detectives knew to be commonly used by drug dealers; (5) defendant became nervous when Detective Parkinson began searching the inside of the Mustang; and (6) defendant ran away from the Detectives when Detective Parkinson requested the keys to the trunk of his Mustang. We have held on numerous occasions that a suspect's attempt to flee in the face of authority is properly considered as a factor in determining whether police conduct was justified under the fourth amendment. See United States v. Lane, 909 F.2d 895, 899 (6th Cir.1990), cert. denied, --- U.S. ----, 1990 W.L. 169439 (1991); United States v. Pope, 561 F.2d 663, 668 (6th Cir.1977). We find that defendant's attempts to flee, in addition to the other incriminating factors, established a "fair probability" that defendant had committed or was about to commit the crime of possessing or selling illegal drugs and, thus, supported a finding of probable cause for the arrest.
 
 
 18
 Defendant also contends that the district court erred in denying his motion on the grounds that the Detectives unlawfully conducted a search of his car prior to obtaining a warrant. It is well established, however, that an "automobile search" may be conducted prior to obtaining a warrant if objective facts otherwise establish probable cause of criminal activity. United States v. Ross, 456 U.S. 798, 809 (1982). Under Ross, the factors which established the probable cause necessary to arrest defendant also justified the subsequent warrantless search of defendant's automobile.[3]
 
 
 19
 Defendant apparently contends that Ross is distinguishable from this case since the information provided to the police by the informants in Ross was more detailed than the information provided here. However, defendant overlooks the critical fact existing in this case, but not in Ross, that the Detectives' suspicions were born out by defendant's multiple attempts to flee.
 
 
 20
 In sum, we agree with the district court that, until the time of defendant's arrest, the Detectives' actions were justified based on defendant's consent to cooperate. Thus, no "stop" prior to arrest occurred in this case. Further, the district court's finding of probable cause was not "clearly erroneous." Finally, we agree that the probable cause which justified defendant's arrest also justified the warrantless search of his automobile, under the reasoning of United States v. Ross, 456 U.S. 798 (1982).
 
 B.
 
 21
 Defendant next argues that his fifth amendment right against compelled self-incrimination and his sixth amendment right to counsel were violated. Both claims are predicated on defendant's testimony that he was not read or did not validly waive his Miranda rights prior to repeated interrogations by the police. However, the district court determined that defendant's testimony at the suppression hearing was not credible. The court further found that the testimony by various police officers that Miranda was adhered to was credible and corroborated by the evidence. After a review of the record, we find that the district court's findings in this regard were not clearly erroneous. See Anderson, 470 U.S. at 574.
 
 C.
 
 22
 Defendant argues that the district court erred in limiting his attorney's cross-examination of two government witnesses at trial. We agree with the district court, however, that the matters which defendant sought to inquire into were irrelevant, repetitive, or exceeded the scope of direct-examination. Thus, we find that the district court did not abuse its discretion in limiting examination on such matters. See Fed.R.Evid. 611(A); United States v. Mills, 366 F.2d 512, 516 (6th Cir.1966) (the court's decision to exclude testimony will be set aside only if the district court abused its discretion).
 
 D.
 
 23
 Finally, defendant argues that the district court improperly charged the jury with regard to the firearms offense under 18 U.S.C. Sec. 924(c)(1), which provides:
 
 
 24
 Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment....
 
 
 25
 18 U.S.C. Sec. 924(c)(1). Defendant's objection to the district court's instruction concerns the court's refusal to use the following language in charging the jury: "The statute requires more than mere possession of a firearm. The mere availability of a firearm, even nearby, is not use in relation to the offense."[5] In all other respects, the instructions proposed by the defendant were identical to the instructions used by the court to charge the jury.
 
 
 26
 A conviction will be overturned based on improper jury instructions only upon a showing of abuse of discretion. United States v. Dunn, 805 F.2d 1275 (6th Cir.1986). An abuse of discretion exists when the instructions taken as a whole "improperly guide the jury in such a substantial way as to violate due process." United States v. Turner, 871 F.2d 1574, 1578 (11th Cir.), cert. denied, 110 S.Ct. 552 (1989). Further, the trial court is under no obligation to use the precise language proposed by the defendant so long as the charge as a whole accurately reflects the law and the facts. United States v. Townsend, 796 F.2d 158, 163 (6th Cir.1986).
 
 
 27
 In charging the jury on section 924(c)(1), the district judge stated:
 
 
 28
 [The] government [must prove] beyond a reasonable doubt that he used or carried a firearm in connection with that offense. The government must establish beyond a reasonable doubt that there was some relation between the use alleged, and the possession with the intent to distribute the controlled substance. (Emphasis added).
 
 
 29
 In order for the possession of a firearm to come within the uses provision of the statute, one of the following is required. One, proof that the defendant possessed cocaine with the intent to distribute it in which the circumstances surrounding the presence of a firearm, suggests that the possessor of the firearm intended to have it available for possible use during the transactions. Or, two, the circumstances surrounding the presence of a firearm in the place where the defendant possessed drugs for distribution suggests that the firearm was strategically located so as to be quickly and easily available for use during such transaction or transactions. (Emphasis added).
 
 
 30
 A person cannot be said to carry a firearm within the meaning of this statute without at least a showing that the gun is within or was within reach during the commission of the drug offense.
 
 
 31
 We find that the charge given by the district court adequately set forth the necessary requirements for finding a violation of 18 U.S.C. Sec. 924(c). Further, defendant's proposed language was merely repetitive of that portion of the instruction which required "some relation between the use alleged, and the possession with intent to distribute the controlled substance." Thus, we find that the district court did not abuse its discretion when it refused to use the language proposed by defendant in charging the jury.
 
 
 32
 AFFIRMED.
 
 
 
 *
 The Honorable Eugene E. Siler, Jr., United States District Judge for the Eastern District of Kentucky sitting by designation
 
 
 [1]
 Miranda v. Arizona, 384 U.S. 436, reh'g denied, 385 U.S. 890 (1966)
 
 
 [2]
 The "tips" provided to the Detectives in this case had a relatively high degree of reliability since they were generally consistent with each other in that they each described a black male driving a red Mustang with fancy wheels as dealing drugs in the area of the King-Kennedy projects. Although the tips lacked specificity in certain regards, they were born out by defendant's nervous behavior, the "beeper" worn on his pants, and his attempt to flee. See Alabama v. White, --- U.S. ----, 110 S.Ct. 2412 (1990); Adams v. Williams, 407 U.S. 143, 147 (1972)
 
 
 [3]
 We note that, according to Detective Parkinson, defendant consented to his request to search the car and, further, such consent was never withdrawn. Thus, defendant's consent would provide an independent justification for the warrantless search of his car
 
 
 [5]
 Similar language was used by the court in United States v. Brown, 915 F.2d 219 (6th Cir.1990) in charging the jury on the elements of a firearms violation under section 924(c)(1)