**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Roy Lee JOHNSON, Defendant– Appellant.**

**Nos. 91–1200, 91–1201.**

United States Court of Appeals, Sixth Circuit.

Reargued Dec. 8, 1993.

Decided June 16, 1994.

Jennifer Mulhern Granholm (briefed and argued), Jennifer J. Peregord (reargued), Office of the U.S. Atty., Detroit, MI, for plaintiff-appellee.

William L. Spern (argued and briefed), Woodhaven, MI, Roy Lee Johnson (briefed), pro se.

Before: MERRITT, Chief Judge; and KEITH, KENNEDY, MARTIN, JONES, MILBURN, GUY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, BATCHELDER and DAUGHTREY, Circuit Judges.

SILER, J., delivered the opinion of the court, in which MERRITT, C.J., KEITH, JONES, MILBURN, BOGGS, SUHRHEINRICH, and DAUGHTREY, JJ., joined. MARTIN, J. (pp. 1338–39), delivered a separate concurring opinion, in which KEITH and JONES, JJ., joined. GUY, J. (p. 1339), also delivered a separate concurring opinion. NELSON, J. (pp. 1339–42), delivered a separate dissenting opinion in which KENNEDY, RYAN, NORRIS, and BATCHELDER, JJ., joined.

SILER, Circuit Judge.

Defendant, Roy Lee Johnson, appeals his jury conviction and consecutive sentences. A

panel of this court previously affirmed the conviction in *United States v. Johnson*, 986 F.2d 134 (6th Cir.1993). We now adopt that decision on all issues set out in the unpublished appendix to the opinion, but we reverse the decision of the district court in finding that the defendant committed two violations of 18 U.S.C. § 924(c) under the circumstances of this case.

In 1989, federal officers executed a search warrant at defendant's residence in Detroit. In the bedroom, the officers found two firearms and two different types of controlled substances, to-wit, fourteen grams of cocaine and 150 Dilaudid (hydromorphone) tablets.

Defendant was indicted for, and convicted of, five counts of criminal offenses, all arising from what was found in his bedroom. Count 1 charged him with possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); Count 2 charged him with the use of the firearms (rifle and handgun) in relation to the drug trafficking crime specified in Count 1, in violation of 18 U.S.C. § 924(c); Count 3 charged him with possession with intent to distribute Dilaudid, in violation of 21 U.S.C. § 841(a)(1); Count 4 charged him with a second violation of 18 U.S.C. § 924(c), using the same firearms in relation to the drug trafficking crime charged in Count 3; and Count 5 charged defendant as a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The sentence on Counts 1, 3, and 5 was for 51 months on each count, to run concurrently. However, the sentence on Counts 2 and 4 was for the mandatory minimum five years per count, consecutive to each other, and consecutive to the 51–month sentence imposed on Counts 1, 3, and 5. Thus, the defendant was sentenced to a total of 171 months' incarceration, plus supervised release.

The narrow question before this court is whether a defendant may be sentenced to two or more consecutive terms for violating 18 U.S.C. § 924(c)(1) [1] by possessing firearms while simultaneously trafficking in two or more controlled substances under 21 U.S.C. § 841.

We decided in *United States v. Pope*, 561 F.2d 663, 669 (6th Cir.1977), that the simultaneous possession of two distinct controlled substances with intent to distribute can be two offenses and result in consecutive sentences. Other circuits have reached a similar conclusion. *See, e.g., United States v. Bonilla Romero*, 836 F.2d 39, 47 (1st Cir.1987), *cert. denied*, 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988); *United States v. DeJesus*, 806 F.2d 31, 35–37 (2d Cir.1986), *cert. denied*, 479 U.S. 1090, 107 S.Ct. 1299, 94 L.Ed.2d 155 (1987); *United States v. Grandison*, 783 F.2d 1152, 1155–56 (4th Cir.), *cert. denied*, 479 U.S. 845, 107 S.Ct. 160, 93 L.Ed.2d 99 (1986); *United States v. Davis*, 656 F.2d 153 (5th Cir. Unit B Sept. 1981), *cert. denied*, 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982); *but see United States v. Martin*, 302 F.Supp. 498 (W.D.Pa.1969), *aff'd*, 428 F.2d 1140 (3d Cir.), *cert. denied*, 400 U.S. 960, 91 S.Ct. 361, 27 L.Ed.2d 269 (1970).

Inasmuch as the Sentencing Guidelines now provide for grouping or combining of controlled substances for purposes of sentencing, *see generally* USSG § 2D1.1, and because the offenses under 21 U.S.C. § 841 carry high maximum penalties, the simultaneous possession of controlled substances almost always results in concurrent sentences, as it did in this case, even where the controlled substances are charged in separate counts of the indictment. *See* USSG § 5G1.2(c). Thus, most, if not all, of the recorded cases on the issue were decided prior to the effective date of the Sentencing

---

1. *18 U.S.C. § 924(c)(1) provides in part:*

Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to impris-

onment for five years.... Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried.

Guidelines in 1987. In this case, the defendant did not challenge in the district court the charging or conviction in two separate counts for simultaneous violations of 21 U.S.C. § 841. Therefore, we leave to another occasion the question of whether *Pope* should be overruled.

The defendant claims that the imposition of consecutive sentences for multiple § 924(c) convictions would violate the Double Jeopardy Clause of the Fifth Amendment to the Constitution under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). However, because we do not reach the question of whether possessing separate controlled substances simultaneously is one predicate offense rather than two, we need not decide whether a problem of multiplicity exists under *Blockburger*. *Cf. United States v. Nabors*, 901 F.2d 1351, 1358 (6th Cir.), *cert. denied*, 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990).

Assuming from *Pope* that the simultaneous possession of more than one controlled substance constitutes more than one predicate offense, we now consider whether the possession of firearms in conjunction with such predicate offenses can result in consecutive mandatory minimum terms under § 924(c). This court, as well as other circuits, has condoned the use of consecutive mandatory minimum terms under § 924(c)(1). For example, in *Nabors*, 901 F.2d at 1357–58, we upheld the use of consecutive sentences under § 924(c)(1) when the defendant used two firearms to protect his sales of crack cocaine and to assault a federal agent attempting to search his apartment. In that case, the two predicate offenses were distinct, in that one was an assault and attempted murder of a federal agent, in violation of 18 U.S.C. §§ 111, 1114, and the other was the possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). We declined to follow *United States v. Torres*, 862 F.2d 1025, 1032 (3d Cir.1988), which held that "although the law allows separate and discrete offenses to be charged, it does not permit separate and discrete sentences to be imposed when Congress did not intend double punishment." However, in *Torres*, the government stipulated that only one sentence

could be imposed for multiple violations of § 924(c)(2), when the predicate offenses were similar to those in *Nabors*, that is, assaulting a federal officer and conspiracy to distribute cocaine. Previously, our court in *United States v. Henry*, 878 F.2d 937, 944 (6th Cir. 1989), left "for another day the question of whether we agree with *Torres*." In that case, one of the convictions under § 924(c)(1) was vacated, because the prosecution used the same predicate offense for two separate § 924(c)(1) counts.

In *United States v. Clark*, 928 F.2d 733, 738 (6th Cir.) (per curiam), *cert. denied*, —— U.S. ——, 112 S.Ct. 144, 116 L.Ed.2d 110, and *cert. denied*, —— U.S. ——, 112 S.Ct. 240, 116 L.Ed.2d 195 (1991), we held that where the defendant possessed one firearm in his hand and another in a bedroom, he could be charged with two separate § 924(c)(1) offenses, even though there was only one predicate drug trafficking offense, that is, possession of crack with intent to distribute. However, the district court merged the two convictions under § 924(c)(1) for purposes of sentencing. Inasmuch as the United States was not an appellant in that case, the decision does not uphold the use of merged convictions for sentencing under similar facts. Nevertheless, such a procedure was upheld in *United States v. Sims*, 975 F.2d 1225, 1235 (6th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1315, 122 L.Ed.2d 702 and *cert. denied*, —— U.S. ——, 113 S.Ct. 1617, 123 L.Ed.2d 177, and *cert. denied*, —— U.S. ——, 113 S.Ct. 1620, 123 L.Ed.2d 179 (1993). Recently, our court has further refined sentencing under the circumstances involving one predicate offense and two firearms by directing the district court to vacate the sentence on the additional firearm count while allowing the first, or the one with the higher penalty, to stand. *See United States v. Taylor*, 13 F.3d 986, 994 (6th Cir. 1994). *See also United States v. Freisinger*, 937 F.2d 383, 392 (8th Cir.1991) (concurrent sentences authorized for § 924(c)(1) convictions with a single underlying offense); *United States v. Chalan*, 812 F.2d 1302, 1317 (10th Cir.1987) (vacated one of two § 924(c)(1) convictions where predicate offenses merged).

Our recitation shows that this hair-splitting sometimes leads to absurd results, which "makes it unreasonable to believe that the legislator intended to include the particular act." *Church of the Holy Trinity v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). The absurdity is that a defendant with one firearm and one marijuana joint, one rock of crack, and one Dilaudid would receive fifteen years (or forty-five years, under the government's theory[2]) for the gun in addition to the sentence on the drug charges, assuming the drugs were possessed with intent to distribute, while a drug kingpin with ten kilos of crack and the same firearm would only receive one five-year sentence, consecutive to his sentence for the drug offense. Therefore, we look to other evidence of congressional intent to determine the resolution of this case. *Public Citizen v. United States Dep't of Justice,* 491 U.S. 440, 454, 109 S.Ct. 2558, 2566–67, 105 L.Ed.2d 377 (1989).

Congressional intent is not clear with regard to Johnson's situation. *United States v. Rawlings,* 821 F.2d 1543, 1546 (11th Cir.) (quoting 114 Cong.Rec. 22231 (1968) (Rep. Poff)), *cert. denied,* 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987), indicated that Congress's intention was clear that if an offender "uses his gun and is caught and convicted, he is going to jail. He should further understand that if he does so a second time, he is going to jail for a longer time." However, the court in *Freisinger,* 937 F.2d at 391, was not as certain of congressional intent concerning a second offense. For that reason, *Freisinger* required that the multiple firearms convictions be run concurrently, following the rule of lenity. As stated in *Holy Trinity,* 143 U.S. at 461, 12 S.Ct. at 512–13, the laws must have a sensible construction. In this case, a sensible construction dictates that possession of one or more firearms in conjunction with predicate offenses involving simultaneous possession of different controlled substances should consti-

tute only one offense under § 924(c)(1), and the sentences under § 924(c)(1) should be for one offense only, *see Taylor,* 13 F.3d at 994.

Therefore, this court **affirms** the convictions of the defendant but **remands** to the district court for resentencing on the firearms charges consistent with this opinion.

BOYCE F. MARTIN, JR., Circuit Judge, concurring, joined by KEITH and JONES, Circuit Judges:

> *"Have you guessed the riddle yet?" the Hatter said, turning to Alice again.*
>
> *"No, I give it up," Alice replied: "what's the answer?"*
>
> *"I haven't the slightest idea," said the Hatter.*
>
> *"Nor I," said the March Hare.*
>
> *Alice sighed wearily. "I think you might do something better with the time," she said, "than wasting it in asking riddles that have no answers."*

LEWIS CARROLL, ALICE'S ADVENTURES IN WONDERLAND 93–94 (Heritage Press 1941).

Like Alice, I too grow weary trying to solve riddles that seem to have no real answers. Because Congress has chosen to strip sentencing discretion from the federal courts, however, I can see no end to the absurdity. In this case, I join Judge Siler's excellent opinion for the majority, because I think it reaches the correct result under 18 U.S.C. § 924(c). I write separately, however, to express, once again, my profound concerns about the current sentencing scheme.

Section 924(c), when applied, often leads to puzzling results. As the majority notes, a defendant who controls a firearm in conjunction with a substantial cache of a single drug will, under the government's reading of the statute, merit a lower sentence than a defendant who possesses a firearm and inconsiderable quantities of two separate illegal substances. *Supra,* p. 1337. In a different time, the answer to this dilemma might well lie in

---

**2.** In its brief, the government suggests that the defendant in this case should have received twenty-five years (five years for the first § 924(c)(1) conviction and twenty years on the second § 924(c)(1) conviction) consecutive to his drug sentence. *See Deal v. United States,* ——

U.S. ——, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993). However, as the government did not appeal that issue, it is not before us. *Deal's* facts are different from those in this case, anyway. *See Taylor,* 13 F.3d at 994 n. 5.

judicial sentencing discretion. The adoption of the Sentencing Guidelines and the enactment of mandatory minimum sentences for many drug crimes, however, forecloses such a common-sense solution. With its transfer of sentencing discretion from judges to prosecutors who control charging decisions, the current scheme seems designed to produce ever longer sentences, even though such increases may be disproportionate and unwarranted. *See* Department of Justice, *An Analysis of Non–Violent Drug Offenders With Minimal Criminal Histories* (1994) (noting that under current system "low-level," first-time drug offenders, who are least likely to commit crimes after release, often get sentences that "overlap with defendants who had much more significant roles in the drug scheme").

Because judicial discretion is no longer the answer to this conundrum, this Court is forced to attempt to divine congressional intent with regard to Johnson's situation. As the numerous separate opinions in this case well demonstrate, however, Section 924(c) is subject to widely divergent interpretation. Given the disparate results often produced by the statute's application, I certainly cannot fault my colleagues for reaching varying conclusions regarding congressional intent. Instead, I am left with the firm conviction that Congress—by establishing the Guideline system and enacting mandatory minimum sentences in statutes like Section 924(c)—presents us with a riddle to which there may be no true answer.

RALPH B. GUY, JR., Circuit Judge, concurring.

Although I concur in the result reached in this case, I do so on the basis of the specific facts presented. I am not willing to say that the simultaneous possession of different drugs and even one firearm under different circumstances may not properly result in multiple convictions and sentences under 18 U.S.C. § 924(c). In the case we are deciding, neither the firearms nor the drugs were found on the person of the defendant. They were found in the bedroom of the home that the defendant was occupying. Although we do not discuss it in this opinion, the "in relation to" element of the § 924(c) count is met by applying the fortress theory relative to the firearms. In other words, the defendant possessed firearms in the house to protect and otherwise facilitate the possession of *all* his drugs. It is unrealistic, as the government did, to try to connect one firearm to one particular drug.

If, however, a drug dealer is standing on a street corner and selling heroin to heroin customers out of one pocket and then selling cocaine to cocaine customers out of another pocket while openly displaying a firearm, I believe that a separate 924(c) charge could attach to a heroin sale and then attach to a cocaine sale, notwithstanding that the drug vendor possessed simultaneously the two different narcotic substances and the firearm.

Applying the logic of the case at bar, if our vendor had been arrested merely in possession of the cocaine, heroin, and firearm, then the reasoning of this decision would apply and he would be chargeable with only one § 924(c) count. In short, I just want to make sure that our language relative to the simultaneous possession of drugs and firearms is not inadvertently extended beyond the facts of this case at this time.

DAVID A. NELSON, Circuit Judge, dissenting.

Defendant Johnson, a professional drug dealer, had two distinct lines of business. Each line of business had its own market and its own economic characteristics. As evidenced by sales records seized at his place of residence, Johnson was in the business of selling the heroin substitute known as Dilaudid to one group of customers, and he was in the business of selling cocaine to a different group of customers. The resale value of the Dilaudid seized at Johnson's residence was far greater than the value of the cocaine; there was testimony that Johnson's inventory of Dilaudid (150 pills) could bring as much as $7,500 on the street, while the cocaine would bring only $500 at most.

Although both of the drugs in which Johnson dealt are listed in schedule II of the controlled substances schedules established by 21 U.S.C. § 812—a listing that classifies both drugs as having "a high potential for

abuse" and carrying a risk of "severe" dependence, see § 812(b)(2)(A) and (C)—they are entirely different drugs with altogether different properties.[1] And an impressive body of published circuit court caselaw stretching back sixty years makes it quite clear that simultaneous possession of two different drugs with intent to distribute them constitutes two different crimes. See *United States v. Busch,* 64 F.2d 27 (2d Cir.), *cert. denied,* 290 U.S. 627, 54 S.Ct. 65, 78 L.Ed. 546 (1933); *Normandale v. United States,* 201 F.2d 463 (5th Cir.), *cert. denied,* 345 U.S. 999, 73 S.Ct. 1141, 97 L.Ed. 1405 (1953); *United States v. Pope,* 561 F.2d 663 (6th Cir.1977); *United States v. Davis,* 656 F.2d 153 (5th Cir.1981), *cert. denied,* 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982); *United States v. Faymore,* 736 F.2d 328 (6th Cir.), *cert. denied,* 469 U.S. 868, 105 S.Ct. 213, 83 L.Ed.2d 143 (1984); *United States v. Grandison,* 783 F.2d 1152 (4th Cir.), *cert. denied,* 479 U.S. 845, 107 S.Ct. 160, 93 L.Ed.2d 99 (1986); *United States v. DeJesus,* 806 F.2d 31 (2d Cir.1986), *cert. denied,* 479 U.S. 1090, 107 S.Ct. 1299, 94 L.Ed.2d 155 (1987); *United States v. Bonilla Romero,* 836 F.2d 39 (1st Cir.1987), *cert. denied,* 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988). But see *United States v. Martin,* 302 F.Supp. 498 (W.D.Pa.1969), *aff'd,* 428 F.2d 1140 (3d Cir.), *cert. denied,* 400 U.S. 960, 91 S.Ct. 361, 27 L.Ed.2d 269 (1970). Our circuit having spoken decisively on this issue in *Pope* and *Faymore,* I take it as given that defendant Johnson was committing one drug trafficking crime by possessing the 150 Dilaudid pills and that he was committing a separate drug trafficking crime by possessing the 14 grams of cocaine.

During each of these crimes, Mr. Johnson used two firearms (a loaded magnum Derringer and a loaded Glenfield semi-automatic rifle) to protect his inventory of drugs. The weapons were available, obviously, to protect both the Dilaudid and the cocaine. The weapons were thus used during and in relation to each of the drug trafficking offenses—and under 18 U.S.C. § 924(c)(1), it is a separate crime, punishable by a mandatory term of imprisonment, to use or carry a firearm "during and in relation to any ... drug trafficking crime...."

The statute says that the prescribed term of imprisonment for anyone who uses or carries a firearm during and in relation to "any" drug trafficking crime shall be imposed "in addition to the punishment provided for such ... drug trafficking crime...." And "[n]otwithstanding any other provision of law," the statute goes on to say, a court shall not grant probation to anyone convicted of violating the statute and shall not suspend any such person's sentence, *"nor shall the term of imprisonment imposed under this [statute] run concurrently with any other term of imprisonment...."* 18 U.S.C. § 924(c)(1) (emphasis supplied.)

Whatever Congress may subjectively have intended with regard to situations such as Mr. Johnson's—and we have no way of knowing for sure whether anyone in Congress ever thought about the fact that such situations would be likely to arise—I see no ambiguity in what Congress actually said. What it said, in sum, was that anyone who commits "any" drug trafficking crime (singular, not plural) and uses a firearm in the process must receive a statutorily prescribed sentence that cannot run concurrently with any other sentence. This means that if a person commits two drug crimes, and if he is convicted of using a firearm during and in relation to both, he must receive two non-concurrent statutorily prescribed sentences for using the firearm. I do not see how the words of the statute can be given any other meaning.

To apply the statute as written, the district court concluded in this case, meant sending Mr. Johnson to prison for a total of about 14 years. That is a harsh sentence, no doubt, but hardly a shocking one. The prosecutor could have paved the way for a lower sentence—she could have had the grand jury indict the defendant on only one count under § 924(c) rather than two counts—but Congress has not seen fit to give the courts a

---

1. Dilaudid is a powerful analgesic that depresses the central nervous system. Cocaine, in contrast, stimulates the central nervous system.

corresponding measure of discretion. Mr. Johnson having been convicted on two § 924(c) counts, the statute says that he must be sentenced to consecutive terms on both counts.

Citing *Church of the Holy Trinity v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892), the majority opinion suggests that this court can nullify the mandatory provisions of the statute in their application to this case because the statute produces an absurd result here—a result that "makes it unreasonable to believe that the legislator intended to include the particular act" at issue. But it is always a tricky business to attribute to "the legislator" an intent contrary to the express terms of a statute passed by majorities of both houses of Congress and signed into law by the President. I find the exercise a particularly troublesome one on the facts now before us, where no reasonable person could say with any assurance that Congress would give a negative answer if we could somehow call on it to state publicly whether it intended to mandate two consecutive prison terms under § 924(c) for drug dealers convicted of using loaded firearms to protect both a cocaine business and a business in synthetic heroin.

A century ago, when *Church of the Holy Trinity* was decided, the kind of cultural diversity that now characterizes our nation and its public servants still lay in the future. It was thus still possible to suggest, as the Supreme Court did in the *Holy Trinity* case, that "this is a Christian nation." *Id.* 143 U.S. at 471, 12 S.Ct. at 516. And it was possible to suggest that when Congress passed a statute making it unlawful to assist "any" foreigner in coming to the United States under contract to perform "any kind" of labor or service here, *id.* at 458, 12 S.Ct. at 511–12, it would be *absurd* to suppose that Congress intended to make it unlawful "for a church of this country to contract for the services of a Christian minister residing in another nation." *Id.* at 471, 12 S.Ct. at 516. A unanimous Supreme Court concluded—

correctly, in all probability—that regardless of what the statute actually said, Congress had no subjective intent to prevent men of the cloth from being brought to this country from abroad to labor in the vineyard of the Lord. Congress having neglected to write an appropriate exception into the statute, the *Holy Trinity* Court did so itself.

The confidence with which the 19th century jurists undertook to identify the subjective intent of Congress and to correct perceived errors and omissions in congressional enactments may have been enhanced not only by the cultural homogeneity of Congress and the Court in those days, but also by the fact that laws passed in that era were more the work of the congressmen themselves and less the work of unknown staff personnel. Perhaps such an environment made it easier than it is today for the Court to divine what the draftsmen were—and were not—thinking about.

Be that as it may, I am not prepared to say, in the case at bar, that § 924(c)(1) cannot sensibly be construed as meaning what it plainly says. Unless one has complete confidence that the discretion vested in prosecutors will always be exercised in a wise and humane manner, it must be conceded that the mandatory features of § 924(c)(1) are likely to work unjust results on occasion. That is true of any such statute; it is always possible to think of hypothetical situations where the results produced by a mandatory minimum sentencing law would be unfair. Given the facts of the case now before us, however, the 14–year sentence received by defendant Johnson does not strike me as unfair when viewed in light of the sentences being meted out to other armed drug dealers.[2]

By 1990, when Congress last amended § 924(c)(1), it is fair to say that the American public and its elected representatives did not have too much sympathy for armed drug dealers. It would not be absurd to suppose that Congress might have wished to come

---

**2.** In this connection I would note that under the Sentencing Guidelines that were in effect when Mr. Johnson was sentenced, the hypothetical drug kingpin referred to in the majority opinion—a person arrested with a firearm and ten

kilograms of crack cocaine—would probably receive a prison sentence totaling more than 20 years, assuming a criminal history identical to Johnson's.

down particularly hard on armed drug dealers who sold multiple types of drugs to multiple clienteles. Neither was it absurd for the district court to conclude that § 924(c)(1) should be applied to Mr. Johnson in accordance with its terms. Accordingly, and because I do not believe that such an application of the statute would violate the Double Jeopardy Clause of the Fifth Amendment under the test of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), I would affirm the sentence.

