**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Herman E. LANE, Defendant–Appellant.**

**No. 89–4067.**

United States Court of Appeals,
Sixth Circuit.

Argued June 14, 1990.

Decided July 31, 1990.

Marilyn A. Bobula (argued), Office of the U.S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Michael G. Dane, Federal Public Defender, Debra M. Hughes (argued), Office of the Federal Public Defender, Cleveland, Ohio, for defendant-appellant.

Before MILBURN and NELSON, Circuit Judges, and ENGEL, Senior Circuit Judge.

MILBURN, Circuit Judge.

Herman Edward Lane appeals his conviction for unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1), arguing that the district court erred by denying his motion to suppress evidence and his motion to dismiss sentence enhancement under the Armed Career Criminal Act, 18 U.S.C § 924(e). For the reasons that follow, we affirm.

## I.

### A.

On February 23, 1989, at 12:21 p.m., Cuyahoga Metropolitan Housing Authority (CMHA) police officer Nickolas Barry and three other CHHA officers responded to a dispatcher's request to investigate an anonymous complaint about an unauthorized person in the hallway, possible drug trafficking, at 6402 Haltnorth Walk, a three-story apartment building located within CMHA's King–Kennedy Housing Project in Cleveland, Ohio. The officers knew that this particular apartment building had problems with drug trafficking and the presence of unauthorized occupants.

The building has a front and rear entrance with separate stairways which lead to a joint hallway on both the second and the third floors. Upon arriving at the building, two officers entered the front door while Barry and another officer used the rear entrance. The two officers who entered the front door encountered four males in the first floor hallway. The four men began running toward the stairs leading to the second floor, but the officers were able to detain two of them. The other two men continued to flee up the stairs toward the second and third floors.

Officer Barry and the officer accompanying him were climbing the rear stairway, and on a landing between the second and third floors they encountered a man running down the stairs. The officer accompanying Barry detained this individual, and Barry proceeded to climb the stairs toward the third floor. Before reaching the third floor, Barry received a radio message from one of the other officers that a male was fleeing up the front stairs to the third floor in an attempt to exit the rear of the building.

At approximately the same time that Barry reached the third floor, Herman Lane, the defendant, arrived at the top of the front stairway on the third floor. Officer Barry, who was in uniform and had his gun drawn and pointed at a 45–degree angle to the ground, saw Lane across the hallway, and he ordered Lane to put his hands up and face the wall. Lane complied and placed his hands against the wall but he subsequently removed his right hand from the wall and attempted to reach into his left coat pocket. Officer Barry physically placed Lane's right hand back on the wall and told him to leave it there, but Lane again attempted to reach into his pocket. Officer Barry again stopped Lane and told him to keep his hands on the wall. Barry then conducted a pat-down search of Lane's outer clothing and discovered what felt like a weapon. Barry reached inside Lane's clothing and removed a .12 gauge sawed-off shotgun. Barry then arrested Lane for carrying a concealed weapon.

### B.

On May 31, 1989, a federal grand jury returned a three-count indictment against Herman Lane, charging him with (1) unlawful possession of a firearm by one who has previously been convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1); (2) unlawful possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. §§ 5861(d) and 5871; and (3) unlawful possession of a sawed-off shotgun not identified with a serial number in violation of 26 U.S.C. §§ 5861(i) and 5871. Count I of the indictment also charged that Lane had previously been convicted of three violent felonies, providing a basis for sentence enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B).

On June 20, 1989, Lane filed a motion to suppress evidence discovered during the search of his person and several motions relating to application of sentence enhancement under the ACCA. On July 7, 1989, Lane filed a motion to dismiss the sentence enhancement portion of the indictment for failure to allege three prior violent felony convictions. On September 7, 1989, the district court denied Lane's motions relating to sentence enhancement under the ACCA, and, following a hearing, it also denied his suppression motion.

On September 11, 1989, Lane entered into a written plea agreement pursuant to Federal Rule of Criminal Procedure 11(a)(2), whereby he pleaded guilty to Count I of the indictment, and Counts II and III were dismissed. Pursuant to the conditional guilty plea, Lane preserved his right to appeal the district court's denial of his motion to suppress search evidence and his motion to dismiss the sentence enhancement portion of the indictment. On November 20, 1989, Lane was sentenced to fifteen years imprisonment, to be followed by three years of supervised release, and ordered to pay a special assessment of $50. This timely appeal followed.

The principal issues on appeal are whether the district court erred by denying Lane's motion to suppress evidence discovered during a search of his person, and whether the district court erred by denying Lane's motion to dismiss the sentence enhancement portion of the indictment.

### II.

#### A. Suppression of Evidence

A district court's "denial of a motion to suppress will be affirmed on appeal if proper for any reason." *United States v. Barrett*, 890 F.2d 855, 860 (6th Cir.1989). "In reviewing a challenged investigatory stop, 'the totality of the circumstances—the whole picture—must be taken into account.'" *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). "In assessing the reasonableness of the stop, the facts are 'judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?'" *United States v. Hardnett*, 804 F.2d 353, 356 (6th Cir.1986), *cert. denied*, 479 U.S. 1097, 107 S.Ct. 1318, 94 L.Ed.2d 171 (1987) (quoting *Terry v. Ohio*, 392 U.S.

1, 21–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968)).

Lane argues that the district court erred by judging the validity of his seizure under the principles of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Lane asserts that Officer Barry effectuated an arrest rather than an investigatory stop, and he contends that his arrest was invalid under the Fourth Amendment because Officer Barry lacked probable cause to arrest him. Therefore, Lane concludes, the evidence discovered during the search of his person must be suppressed as the fruit of an illegal seizure.

Alternatively, Lane argues that if Barry's conduct is properly characterized as an investigative stop, the district court erroneously applied the *Terry* principles. Lane asserts that his seizure was not supported by reasonable and articulable suspicions of criminal activity as required under *Terry* because Officer Barry was acting in response to an anonymous tip. Moreover, Lane contends that Barry's intrusion into his personal security was unreasonable in that Barry approached Lane with his weapon drawn, but he had no basis for believing that Lane was armed. Therefore, Lane concludes that his seizure does not fit within *Terry*'s narrow exception to the Fourth Amendment.

> In *Terry,* the Court held that a police officer may conduct a "stop" and "frisk" of an individual "for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest" so long as the officer is "able to point to specific and articulable facts" which give rise to a reasonable suspicion of criminal activity.

*Hardnett,* 804 F.2d at 356 (quoting *Terry,* 392 U.S. at 21–22, 88 S.Ct. at 1879–80). The distinction between an investigative stop and an arrest "generally depends on the reasonableness of the stop under the circumstances." *Hardnett,* 804 F.2d at 356.

In *Hardnett,* we identified two factors to be examined in testing the reasonableness of a seizure. First, we must decide "whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion." *Id.* Second, we must decide "whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Id.* Applying these two factors to the present case, we conclude that Lane's seizure was a valid investigative stop, rather than an arrest.

■ Officer Barry had a proper basis for stopping Lane. Officer Barry was "aware of specific and articulable facts which gave rise to a reasonable suspicion [of criminal activity]." *Id.* First, Barry and the other officers entered the apartment building in response to an informant's tip that there was an unauthorized person in the building possibly engaging in drug trafficking. "An informant's tip is sufficient to establish reasonable suspicion; it need not be based exclusively on an officer's personal observations." *Id.* Lane argues that the informant's tip in this case is insufficient to establish reasonable suspicion because the tip was vague and the informant was anonymous. The Supreme Court has held that a sufficiently corroborated anonymous tip can furnish reasonable suspicion for an investigative stop. *See Alabama v. White,* — U.S. ——, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). However, it is unnecessary to decide whether the anonymous tip in this case was sufficiently corroborated because there are other specific and articulable facts which support a reasonable suspicion of criminal activity.

The officers were aware that the specific apartment building they were entering had been a problem location for unauthorized persons and drug trafficking. Although this factor alone does not create a reasonable suspicion, it is a part of "the totality of the circumstances—the whole picture—[which] must be taken into account." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981);

see also *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1 (1989). While the informant's tip and the officers' knowledge about the apartment building are important background facts, the suspects' conduct is essential to complete the whole picture.

When two uniformed officers entered the front door of the apartment building, they encountered four males in the front hallway, and the four men began running up the stairway leading to the second floor. In *United States v. Pope*, 561 F.2d 663, 668 (6th Cir.1977), we held that "flight in the face of a clear showing of lawful authority supplied [a reasonable suspicion that the suspect] was engaged in criminal activity." In *Pope*, a suspect fitting a drug courier profile was observed by agents in an airport concourse. The suspect's conduct was consistent with innocent behavior, but when a plainclothes agent approached and identified himself as an agent, the suspect broke into a run. *Id.* We observed, "Flight invites pursuit and colors conduct which hitherto has appeared innocent." *Id.* Similarly, in the present case, the four males broke into a run when the uniformed officers entered the apartment building. The suspects' flight invited pursuit, and along with the background facts, supplied the officers with a reasonable basis for conducting an investigative stop. *See also United States v. Haye*, 825 F.2d 32, 34 (4th Cir.1987) (valid *Terry* stop where suspect fled from identified law enforcement agent); *see also United States v. Hughes*, 898 F.2d 63, 64 (6th Cir.1990) (The presence of a suspect in a neighborhood notorious for drug trafficking and the suspect's flight after being confronted by the police are two of "four factors which should be assayed in determining whether the 'totality of the circumstances' provides probable cause in a drug case.").

■ The second factor to consider in testing the validity of the stop is whether the degree of intrusion into the suspect's personal security was reasonable given the officers' suspicions and the surrounding circumstances. While a seizure effectuated with weapons drawn may be highly in-

trusive into a suspect's personal security, "the mere use or display of force in making a stop will not necessarily convert a stop into an arrest." *Hardnett*, 804 F.2d at 357. "Where the display or use of arms is viewed as 'reasonably necessary for the protection of the officers,' the courts have generally upheld investigative stops made at gunpoint." *Id.* The test is whether "the surrounding circumstances give rise to a justifiable fear for personal safety...." *Id.*

The "surrounding circumstances" in this case include a complaint of possible drug trafficking at an apartment building known for drug trafficking, an unknown number of unauthorized persons in the building, flight by suspects from clearly identified law enforcement officers, and a lone officer's encounter with a fleeing suspect. Although the informant did not tell the officers that the suspects were armed, Barry testified that the officers knew the building had problems with drug trafficking, so they took precautions upon entering the building.

In *United States v. White*, 648 F.2d 29, 30–31 (D.C.Cir.), *cert. denied*, 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233 (1981), officers received an anonymous tip by telephone regarding the location of a vehicle whose occupants, according to the tipster, were engaged in drug trafficking. Although the tipster did not say that the occupants of the car were armed, one officer approached the car with his weapon drawn because his prior experience with drug arrests gave him reason to be concerned about his safety. *Id.* at 35. The court held that this was a reasonable use of force to conduct a *Terry* stop. *Id.* at 35–36. Similarly, although Officer Barry was not told that Lane was armed, Barry's knowledge of drug trafficking problems at the building and Lane's flight from the other officers made Barry's display of his weapon "reasonably necessary under the circumstances." *Hardnett*, 804 F.2d at 357.

■ Since both factors identified in *Hardnett* are satisfied, we conclude that Officer Barry conducted a permissible *Ter-*

*ry* investigative stop. Incident to a valid *Terry* stop, an officer may frisk the suspect for weapons if the officer reasonably believes that the suspect is armed and dangerous. *Adams·v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). In this case, Officer Barry conducted a pat-down search of Lane's outer clothing after Lane twice attempted to reach into his coat pocket. Given Lane's flight from the other officers and his attempts to reach into his coat pocket, Barry had a reasonable belief that Lane was armed and dangerous, which justified his frisking Lane for weapons. Therefore, the sawed-off shotgun was discovered incident to a valid *Terry* frisk, and the district court correctly denied Lane's motion to suppress the search evidence.

### B. Enhanced Sentence

Count I of the indictment charged that Lane had been previously convicted of three "violent felony" offenses, as defined in 18 U.S.C. § 924(e)(2)(B). Under the ACCA, a person who violates 18 U.S.C. § 922(g) by unlawfully possessing a firearm and who has three previous violent felony convictions receives a mandatory fifteen-year term of imprisonment. A violent felony is defined in section 924(e)(2)(B) as

any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The indictment charged that Lane had been previously convicted once for attempted burglary and twice for aggravated robbery with a gun. In his motion to dismiss the sentence enhancement portion of Count I, Lane argued that his conviction for at-

tempted burglary was not a "violent felony" within the meaning of § 924(e)(2)(B)(ii). Lane asserted that the first part of subsection (ii) was inapplicable because an attempted burglary is not a "burglary," and attempted crimes are not specifically enumerated. Lane also argued that the second part of subsection (ii), the "otherwise" clause, was inapplicable because attempted burglary does not inherently involve potential risk of physical injury to another. The district court denied Lane's motion, holding that attempted burglary is a violent felony under the ACCA because it "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

On appeal, Lane argues that the district court erred by failing to consider his actual conduct and the facts underlying his conviction for attempted burglary. Lane seeks a remand to the district court for an evidentiary hearing on whether the actual conduct underlying his conviction for attempted burglary brings that conviction within the definition of a violent felony under § 924(e)(2)(B). The government contends that Lane's argument seeking judicial inquiry into the actual conduct and facts underlying his conviction for attempted burglary has been raised for the first time on appeal and should not be considered by this court. *See United States v. McDowell Contractors, Inc.,* 668 F.2d 256, 257 (6th Cir.1982) (per curiam).

Although Lane's argument on appeal is different from the argument made in the district court, the ultimate issue presented is the same—whether his conviction for attempted burglary is a "violent felony" as defined in § 924(e)(2)(B). "[T]here are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt, ... or where 'injustice might otherwise result.'" *United States v. Baker,* 807 F.2d 1315, 1321 (6th Cir.1986) (quoting *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976)). Therefore, we will address the merits of this issue.

■ Lane's argument for consideration of the actual conduct underlying his conviction is contrary to our ruling in *United States v. Taylor*, 882 F.2d 1018, 1023 (6th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 2592, 110 L.Ed.2d 273 (1990). In *Taylor*, we held "that the determination whether a defendant's prior conviction involves a 'violent felony' within the meaning of § 924(e) is to be decided not by reference to his actual conduct in the charged transactions but by reference to the statute under which it was obtained." *Id.* Our decision is consistent with the Supreme Court's recent ruling that "the language of § 924(e) generally supports the inference that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *United States v. Taylor*, — U.S. —, ——, 110 S.Ct. 2143, 2159, 109 L.Ed.2d 607 (1990). However, Lane contends that the district court's reliance on the "otherwise" clause of subsection (ii) makes our decision in *Taylor* inapplicable and requires consideration of the actual conduct underlying his conviction for attempted burglary. Lane asserts that the language of the "otherwise" clause clearly requires consideration of the underlying conduct because the clause applies only to crimes that "involve[] *conduct* that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added).

We reject Lane's argument. Our decision in *Taylor* precludes consideration of the actual conduct underlying a conviction whenever a court must determine "whether a defendant's prior conviction involves a 'violent felony' within the meaning of § 924(e)...." *Taylor*, 882 F.2d at 1023. Other circuits which have addressed this issue have concluded that under the "otherwise" clause of subsection (ii), inquiry into the specific conduct involved in an earlier conviction is prohibited. *See United States v. Sherbondy*, 865 F.2d 996, 1008–09 (9th Cir.1988); *United States v. Headspeth*, 852 F.2d 753, 759 (4th Cir.1988).

In *Sherbondy*, the Ninth Circuit concluded that the first part of subsection (ii) sets forth categorical property offenses, and that the "otherwise" clause is a generalized version of this categorical approach. 865 F.2d at 1008. The court observed:

> We do not view the "otherwise" clause as an indication by Congress of its intention to abandon the categorical approach it uses throughout the section in favor of one that requires courts to examine individual acts in the case of the unspecified offenses; rather we construe it as an attempt to set forth a general description that serves to expand the intended categories beyond the four explicitly listed.

*Id.* Thus, the court concluded "that subsection (ii) does not permit inquiry into the individual defendant's specific conduct in committing the prior offense." *Id.* at 1009.

The Supreme Court found the reasoning of *Sherbondy* to be persuasive, and the Court stated that "the only plausible interpretation of § 924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." *Taylor*, — U.S. at —, 110 S.Ct. at 2160. The Court observed that the language of § 924(e) and the legislative history of the enhancement statute indicate that Congress chose a categorical rather than a factual approach to predicate offenses. The Court also noted that "the practical difficulties and potential unfairness of a factual approach are daunting." *Id.* at ——, 110 S.Ct. at 2159.

■ Thus, when determining whether a prior conviction is a "violent felony," for purposes of § 924(e), reference is made to the statute under which the conviction was obtained rather than the actual conduct involved. The inquiry in this case is whether attempted burglary under the Ohio statute is a crime for which Lane's sentence may be enhanced under § 924(e)(2)(B)(ii).

■ It is questionable whether Lane's conviction for attempted burglary falls within the "burglary" category of § 924(e)(2)(B)(ii) because Ohio's burglary statute is broader than the Supreme Court's generic definition of burglary,

which is "an unlawful or unprivileged entry into or remaining in a building or other structure, with intent to commit a crime." *Taylor,* —— U.S. at ——, 110 S.Ct. at 2158.[1] In *Taylor,* the Supreme Court observed that some states' burglary statutes "define burglary more broadly, *e.g.,* by eliminating the requirement that the entry be unlawful, or by including places, such as automobiles and vending machines, other than buildings." *Id.* at ——, 110 S.Ct. at 2158. Where a state's burglary statute is broader than the generic meaning of burglary, the sentencing court may go beyond the mere fact of conviction to determine if "the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id.* at ——, 110 S.Ct. at 2160. The Court explained in *Taylor* that

> in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

*Id.* at ——, 110 S.Ct. at 2160.

Ohio's burglary statute provides in relevant part that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure ... or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense...." Ohio Rev.Code Ann. § 2911.12 (Anderson 1987). An "occupied structure" is defined as

> any house, building, outbuilding, watercraft, aircraft, railroad car, truck, trailer, tent, or other structure, vehicle, or shelter, or any portion thereof, to which any of the following applies:
>
> (A) Which is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied, and whether or not any person is actually present;
>
> (B) Which at the time is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present;
>
> (C) Which at the time is specially adapted for the overnight accommodation of any person, whether or not any person is actually present;
>
> (D) In which at the time any person is present or likely to be present.

Ohio Rev.Code Ann. § 2909.01 (Anderson 1987).

Because Ohio's burglary statute includes places other than buildings, it is broader than the Supreme Court's generic definition of burglary. Therefore, to determine if Lane's prior conviction for attempted burglary falls within the generic definition of burglary, it would be necessary to examine the indictment to determine if Lane was charged only with the burglary of a building. On the basis of the record before us, we cannot make that determination. However, this does not preclude our finding the sentence enhancement appropriate under the "otherwise" clause of § 924(e)(2)(B)(ii).[2]

---

1. In *Taylor,* we held that despite its repeal of the ACCA's generic definition of burglary in 1986, "Congress [has] never abandoned its consistent understanding that 'burglary' was the crime defined by the generic definition of burglary in the 1984 ACCA." *See Taylor,* 882 F.2d at 1027–28. The Supreme Court observed that its generic definition of burglary "is practically identical to the 1984 definition that, in 1986, was omitted from the enhancement provision." *Taylor,* —— U.S. at ——, 110 S.Ct. at 2158. The Court noted that the 1984 definition was not explicitly replaced and its omission "implies, at most, that Congress did not wish to specify an exact formulation that an offense must meet in order to count as 'burglary' for enhancement purposes." *Id.* Therefore, we employ the Supreme Court's generic definition of burglary rather than the ACCA's 1984 definition.

2. In *Taylor,* the Supreme Court indicated in a footnote that its decision concerned only "what offenses should count as 'burglaries' for enhancement purposes." —— U.S. at —— n. 9, 110 S.Ct. at 2161 n. 9. The Court stated, "The Government remains free to argue that any offense—including offenses similar to generic burglary—should count towards enhancement as one that 'otherwise involves conduct that presents a serious potential risk of physical injury to another' under § 924(e)(2)(B)(ii)." *Id.* Thus, although we are unable to determine if Lane's prior conviction should count as a "burglary," we can decide if sentence enhancement is proper under the "otherwise" clause.

Following the categorical approach of the ACCA, we conclude that attempted burglary in Ohio is a crime which "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). As noted earlier, burglary in Ohio requires "trespass in an occupied structure ... with purpose to commit therein any theft offense...." Ohio Rev.Code Ann. § 2911.12. An "occupied structure" is defined broadly to include places in which a person is actually or likely to be present. *See* Ohio Rev.Code Ann. § 2909.01. A Committee Comment following § 2909.01 states, "The definition's general concept is that the actual or likely presence of a person in a structure, regardless of the nature of the structure itself, creates a more serious risk of harm from commission of arson, burglary, and related offenses, and thus warrants more severe treatment of offenders." Thus, burglary in Ohio "presents a serious potential risk of physical injury to another" because the burglary statute requires the actual or likely presence of a person in the burglarized structure.

The fact that Lane's prior conviction was for attempted burglary rather than burglary does not preclude sentence enhancement under the "otherwise" clause. Under Ohio law, an attempt to commit a particular crime requires the *mens rea* of purpose or knowledge and conduct toward the commission of that crime. *See* Ohio Rev.Code Ann. § 2923.02 (Anderson 1987); *State v. Reed,* 65 Ohio St.2d 117, 121–23, 418 N.E.2d 1359, 1363 (1981). Thus, although Lane may not have completed the burglary offense, his conviction for attempted burglary represents an intent to commit the crime.

In *Taylor,* the Supreme Court recognized that burglary involves an "inherent potential for harm to persons." —— U.S. at ——, 110 S.Ct. at 2153. The Court stated, "The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate." *Id.* The fact that Lane did not complete the burglary offense does not diminish the serious potential risk of injury to another arising from an attempted burglary.[3] Therefore, we hold that Lane's conviction for attempted burglary is a "violent felony" under the "otherwise" clause of § 924(e)(2)(B)(ii).

### III.

Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.

---

**3.** Two district courts have held that an attempted burglary conviction is a "violent felony" within the meaning of the ACCA. *See United States v. Fish,* 726 F.Supp. 156, 159 (E.D.Mich. 1989); *United States v. Sanders,* 705 F.Supp. 396, 399 (N.D.Ill.1988). These courts have reasoned that "an attempt involves substantially the same risk of injury as does the actual burglary." *Fish,* 726 F.Supp. at 159.