25 F.3d 1052
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
David L. WALLACE, Darrin Hicks, and Christopher Darren
Morgan, Defendants-Appellants.
 Nos. 93-1870, 93-1885, 93-1906 and 93-1957.
 United States Court of Appeals, Sixth Circuit.
 May 19, 1994.
 
 Before: KENNEDY and NELSON, Circuit Judges; and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants Christopher Morgan, David Wallace and Darrin Hicks appeal their convictions and sentences imposed pursuant to guilty pleas to charges of conspiracy to distribute cocaine and possession with intent to distribute cocaine. Morgan assigns six errors on appeal: the District Court erred (1) in determining Morgan's sentence based on statements made by Morgan to police in violation of Miranda; (2) by failing to inquire into the government's motive for not making a downward departure motion; (3) in concluding that the court could not depart below the statutory minimum based on the government's section 5K1.1 motion; (4) by finding Morgan responsible for 500 grams of crack cocaine; (5) by denying Morgan a downward adjustment for his minimal role in the offense; and (6) by denying Morgan a downward adjustment on the basis of his physical condition.
 
 
 2
 Hicks and Wallace appeal the District Court's denial of their suppression motion based on a warrantless search of their house. Wallace also appeals the District Court's denial of a different suppression motion based on a warrantless search of his vehicle. For the reasons stated below, we affirm.
 
 I.
 
 3
 On December 2, 1991, Morgan was arrested with 41.5 grams of crack cocaine. Morgan agreed to cooperate with police and told Lieutenant Jerome Koger that he would make a controlled purchase from his supplier of six years, defendant Wallace.
 
 
 4
 Police placed Wallace's house under surveillance. On December 28, 1991, police saw Wallace's car, a burgundy Pathfinder which Morgan said was used to make drug deliveries, leaving the house. Police stopped the car and arrested the driver. A search of the car produced various crack cocaine paraphernalia. After officers returned to Wallace's house, they believed they had been spotted by the occupants. The officers approached the house and, hearing commotion, decided to force entry and conduct a protective sweep. The officers subsequently obtained a search warrant and seized between 1700 and 1800 grams of cocaine, and arrested defendants Hicks and Wallace.
 
 
 5
 A grand jury indicted the defendants on various narcotics and firearms offenses. Morgan filed a motion to suppress statements he made to police allegedly in violation of Miranda, which the District Court denied. Morgan entered a guilty plea to conspiracy to distribute cocaine, in violation of 21 U.S.C. Sec. 846, possession with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1), and using a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. Sec. 924(c). Morgan's plea was not conditional.
 
 
 6
 Hicks and Wallace entered conditional pleas to conspiracy to distribute cocaine, in violation of 21 U.S.C. Sec. 846, and possession with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1).. The District Court sentenced Hicks and Wallace to 120 months imprisonment on each count, to run concurrently. The court sentenced Morgan to 120 months on the drug counts, to run concurrently, and 60 months on the firearm count, to run consecutive to the drug offense sentences.
 
 
 7
 On March 19, 1993, a grand jury returned an indictment charging Wallace with possession with intent to distribute 238 grams of crack cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). The crime was committed while Wallace was free on bond on the first drug charge. Wallace entered a conditional plea to the charge in the second indictment. The District Court sentenced Wallace to 48 months imprisonment, to run consecutive to the sentence imposed on the first indictment. The defendants' cases have been consolidated on appeal.
 
 II.
 A.
 
 8
 Morgan's first assignment of error is that the District Court erred in determining Morgan's sentence based on statements made by Morgan to police in violation of Miranda v. Arizona, 384 U.S. 436 (1966). The trial court found that Morgan's Miranda rights were not violated. Morgan challenges this finding on the ground that the court improperly based its finding on the fact that the government presented two witnesses on the issue and Morgan only presented one.
 
 
 9
 The prosecution bears the burden of proving by a preponderance of the evidence that a defendant voluntarily waived his Miranda rights. Colorado v. Connelly, 479 U.S. 157, 168 (1986). This Court will not disturb the trial court's findings concerning specific events surrounding a confession unless they are clearly erroneous. United States v. Wrice, 954 F.2d 406, 411 (6th Cir.), cert. denied, 112 S.Ct. 2206 (1992) (citations omitted). A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948), quoted in Anderson v. Bessemer City, N.C., 470 U.S. 564, 573 (1985). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson, 470 U.S. at 574. In exercising its discretion, however, the trial court must apply correct legal standards. Mannino v. International Mfg. Co., 650 F.2d 846, 849 (6th Cir.1981).
 
 
 10
 After Morgan was arrested and posted bond, he was brought to the Flint Police Department to be questioned by Lt. Koger and another officer. At Morgan's suppression hearing, there was a dispute between the police and Morgan as to whether, during police questioning, Morgan had been read his rights and whether he had been told that he was free to leave at any time. The District Court stated, "what I am forced to do is to conclude that two unimpeachable or unimpeached witnesses outweigh one witness," and concluded that the defendant knew he was free to leave. Joint App. at 260. Morgan argues that the trial court applied an incorrect legal standard in basing its factual finding on the number of witnesses testifying on each side. We disagree. Although the number of witnesses is not controlling, neither is it irrelevant. A court, faced with credible witnesses on both sides, may take into account the number of witnesses testifying to a particular set of facts. Both officers testified that they told Morgan that he was free to leave and that when they attempted to read Morgan his rights, he interrupted them and said he wanted to cooperate. The court was entitled to find that the officers' corroboration of each other's testimony lent support to their version of the events. The court's finding was not clearly erroneous.
 
 B.
 
 11
 Morgan's second challenge is to the government's failure to move for a downward departure below the statutory mandatory minimum, as authorized by 18 U.S.C. Sec. 3553(e). He argues that the government's decision not to make such a motion was unconstitutionally motivated by a desire to punish Morgan for filing a suppression motion.
 
 
 12
 Section 3553(e) of Title 18 authorizes the sentencing court, upon motion of the government, to depart below a statutory minimum to reflect a defendant's substantial assistance to the government in the prosecution of other suspects. Similarly, section 5K1.1 of the United States Sentencing Guidelines ("Guidelines") permits the court, upon motion of the government, to depart from the guidelines if a defendant has provided substantial assistance to the government. Here, pursuant to the Plea Agreement, the government moved, under section 5K1.1 of the Guidelines, for a downward departure based on assistance provided the government by Morgan. The government explicitly limited the motion to section 5K1.1, stating that, due to certain negative actions by Morgan, the government would not move for a downward departure below the statutory minimum as provided by section 3553(e). Acknowledging that Morgan had provided useful information leading to the arrest of defendant Wallace, counsel for the government said that Morgan had ceased to be useful because he had perjured himself at the suppression hearing and sentencing hearing and, therefore, could not be used as a witness. Joint App. 357-61. The prosecutor's statements of which Morgan complains were as follows:
 
 
 13
 MR. JONES [The United States]: ... [Morgan] did give a statement and it assisted us in terms of acquiring Dave Wallace. And I'm moving for the 5K1.1 motion because of that.
 
 
 14
 He elected though, to go forward on his suppression motion and indeed today, and with all do (sic) respect to the man who is a few feet away from me, I submit that he's perjured himself on more than one occasion. His usefulness to the Government under those circumstances becomes very questionable if completely out of the realm of possibility....
 
 
 15
 Joint App. at 359 (emphasis added). According to Morgan, this statement demonstrates that the government declined to move for a downward departure under section 3553(e) in order to punish Morgan for exercising his Fifth Amendment right to challenge the use of his statements made to police. He argues that the government appears to have acted with an unconstitutional motive and that he is entitled to a hearing to resolve the question.
 
 
 16
 In Wade v. United States, 112 S.Ct. 1840 (1992), the Supreme Court held that a district court may review a prosecutor's refusal to move for a downward departure if it finds that the refusal was based on an unconstitutional motive, such as the defendant's race or religion. Id. at 1843-44. Merely alleging that the defendant provided substantial assistance is insufficient to challenge the government's decision. Rather, a defendant must make a substantial threshold showing of a constitutional violation, which must be more than a generalized allegation of improper motive. Id. at 1844.
 
 
 17
 In this case, Morgan has failed to make the requisite showing of an unconstitutional motive. The only evidence in support of Morgan's claim was the prosecutor's statement in open court. Reading the prosecutor's statement in its entirety, it appears to us that the government's refusal to move under section 3553(e) was based, not on Morgan's suppression motion itself, but on the prosecutor's belief that Morgan perjured himself at the hearing on that motion, as well as at the sentencing hearing. In addition, the trial judge, who was in a better position than we are to interpret the prosecutor's remarks, drew the same conclusion about the prosecutor's statements. Joint App. at 362. Furthermore, the court appears to have concurred in the prosecutor's opinion that Morgan had perjured himself. Joint App. at 364. We also note, as did the District Court, the dubiousness of Morgan's claim in that the prosecutor did move for a section 5K1.1 departure. We conclude that Morgan's allegation, supported by nothing more than the prosecutor's in-court statement, failed to establish a substantial threshold showing of an unconstitutional motive and did not warrant further judicial enquiry.
 
 C.
 
 18
 Morgan's third contention is that the District Court erroneously concluded that it could not grant Morgan a downward departure for substantial assistance below the statutory minimum. When the government made its motion for downward departure pursuant to section 5K1.1, it asserted that because it was not moving under section 3553(e), the court was without authority to depart below the statutory minimum. Joint App. at 358. The court agreed with this statement and sentenced Morgan to the statutory minimum of 180 months. Joint App. at 362, 364. Morgan argues on appeal that, once the government made a downward departure motion based on Morgan's substantial assistance, the court had authority to depart below the statutory minimum. This is so, Morgan argues, even if the government's motion is limited to section 5K1.1 of the Guidelines.
 
 
 19
 There is a split in the circuits as to whether a trial court may depart below a statutory minimum when the government's motion for downward departure is based solely on section 5K1.1 of the Guidelines. Some circuits hold that while section 5K1.1 authorizes the trial court to depart below the guideline range, the court is without discretion to depart below a statutory minimum absent a government motion made pursuant to 18 U.S.C. Sec. 3553(e). See, e.g., United States v. Rodriguez-Morales, 958 F.2d 1441, 1443 (8th Cir.), cert. denied, 113 S.Ct. 375 (1992). Other circuits hold that section 5K1.1 "implements" section 3553(e) and, therefore, once the government makes a section 5K1.1 motion, the court may depart below the statutory minimum as authorized by section 3553(e). See, e.g., United States v. Cheng Ah-Kai, 951 F.2d 490, 493-94 (2d Cir.1991); United States v. Keene, 933 F.2d 711, 713-14 (9th Cir.1991). This Circuit has yet to visit the question.
 
 
 20
 We leave a decision on the question for a later day, however, because Morgan has not preserved the issue for appeal. At the sentencing hearing, the trial court gave Morgan an opportunity to respond to the government's sentencing recommendation. Morgan not only failed to argue, in opposition to the court's and government's position, that section 5K1.1 of the Guidelines permits the court to depart below the statutory minimum, he explicitly concurred with the court's statement regarding its sentencing authority. When the court said it could go down to the statutory minimum, Morgan's counsel replied, "That's what we're asking you [to] do. That's what we're asking you [to] do, to go down to the lowest point." Joint App. at 362. Counsel then made an argument in favor of a downward departure at the conclusion of which he said, "Under the circumstances to go any higher than [180 months] would be inequitable." Joint App. at 363. A review of the transcript reveals that Morgan was seeking a departure to the statutory minimum, not below it. Because Morgan made no request to the court for a departure below the statutory minimum, we will not review the court's failure to do so.[1] See United States v. Nagi, 947 F.2d 211, 213 (6th Cir.1991) (holding that failure to object at the trial court to the application of a version of the Sentencing Guidelines foreclosed an appeal of the issue).
 
 D.
 
 21
 Morgan next challenges the District Court's drug-quantity finding. The court found Morgan responsible for distributing a half-kilo or 500 grams of crack cocaine. Joint App. at 355. Morgan argues that the cocaine evidence does not indicate whether it was powder cocaine or crack cocaine, the latter carrying a higher offense level, and that the ambiguity should be resolved in Morgan's favor.
 
 
 22
 "The amount of drugs chargeable to a defendant is a question of fact reviewable by this court under the clearly erroneous standard." United States v. Clemons, 999 F.2d 154, 156 (6th Cir.1993), cert. denied, 114 S.Ct. 704 (1994). Morgan pled guilty to conspiracy to distribute powder cocaine and crack. Joint App. at 33-34. The conspiracy operated from mid 1989 until January, 1992. Joint App. at 33. Defendant Wallace was his co-conspirator and supplier. A defendant is liable for quantities of drugs dealt by a co-conspirator provided such amounts are reasonably foreseeable to the defendant. United States v. Lloyd, 10 F.3d 1197, 1219 (1993). The evidence of drugs dealt by Wallace derives primarily from statements made by Morgan to Lt. Koger. Therefore, such amounts are clearly foreseeable to Morgan and he may be held responsible for them. Indeed, Morgan does not argue that he is not responsible for amounts attributable to Wallace but argues that the evidence, while establishing the trafficking of substantial quantities of powder cocaine, does not support the court's finding of a half-kilo of crack.
 
 
 23
 We disagree. Lt. Koger testified that Wallace was the largest crack dealer in Flint and that he had been dealing more than 15 kilograms a month. Joint App. at 246. While Morgan was a member of the conspiracy, Morgan told Lt. Koger, Wallace dealt both powder and crack cocaine. Joint App. at 240. Morgan told Lt. Koger that Wallace stored large quantities of cocaine, including crack, at 3701 Mason in Flint. Joint App. at 243-44. Morgan said that the majority of the drugs sold by Wallace was crack. Joint App. at 242. Morgan also told Lt. Koger that he bought crack and powder cocaine from Wallace and converted some of the powder to crack. Joint App. at 242. When Morgan was arrested, he possessed 41 grams of crack, which he purchased from Wallace. Joint App. at 244, 252. Finally, Lt. Koger testified that, based on information gained from Morgan and others involved in the conspiracy, he estimated that well over half a kilogram of crack had been distributed. Joint App. at 245-46. Based on this evidence, the court's finding was not clearly erroneous.
 
 E.
 
 24
 Morgan raises two additional sentencing issues on appeal. He argues that the District Court erroneously denied his motion for downward adjustment based on his minimal role in the offense, pursuant to section 3B1.2 of the Guidelines. Second, Morgan argues that the court erroneously denied his motion, made pursuant to section 5H1.4 of the Guidelines, for a downward adjustment based on Morgan's physical condition. We need not address these issues, however, because, due to the sentencing court's downward departure to the statutory minimum based on the quantity of drugs involved, a determination of these issues would have no affect on Morgan's sentence.
 
 III.
 
 25
 Defendants Hicks and Wallace appeal the District Court's order denying their motion to suppress evidence seized after a warrantless entry by police at 3701 Mason, the residence from which Wallace distributed drugs. The District Court denied the motion on the ground that the officers had probable cause to believe that drug trafficking was occurring in the house and that exigent circumstances justified the officers' warrantless entry to prevent the destruction of evidence.
 
 
 26
 In order for police officers to effect a warrantless entry or search of a home or lodging, there must be probable cause and exigent circumstances. United States v. Ogbuh, 982 F.2d 1000, 1002 (6th Cir.1993). "A warrantless entry to prevent the loss or destruction of evidence is justified, if the government demonstrates: (1) a reasonable belief that third parties are inside the dwelling; and (2) a reasonable belief that the loss or destruction of evidence is imminent." United States v. Radka, 904 F.2d 357 (6th Cir.1990) (citing United States v. Sangineto-Miranda, 859 F.2d 1501, 1512 (6th Cir.1988)). The question whether exigent circumstances exist is ultimately a legal question, which we review de novo. Sangineto-Miranda, 859 F.2d at 1512. In making this determination, we accept the factual findings of the trial court unless clearly erroneous. United States v. Morgan, 743 F.2d 1158, 1162 (6th Cir.1984), cert. denied, 471 U.S. 1061 (1985).
 
 
 27
 The facts in this case are not in dispute.[2] Prior to the seizure, Morgan told officers that Wallace had been his supplier for six months. Morgan described Wallace to the police, told them Wallace's beeper number, and showed officers Wallace's drug trafficking house at 3701 Mason. Morgan also described two vehicles, a burgundy Pathfinder and a burgundy Camaro Z-28, used by Wallace to transport drugs from Detroit to the house in Flint. Morgan told police that the presence of the Pathfinder meant that drug trafficking was occuring. Morgan said that shipments were brought in regularly, especially on Friday or Saturday, and that he had seen large quantities of crack at 3701 Mason as recently as December 16, 1991. Morgan also said that Wallace and others carried firearms.
 
 
 28
 In addition, for the past several months, the police had been receiving complaints on a daily basis of heavy drug trafficking at 3701 Mason. Some of these call-ins identified a "Jerome Cooper" as one of the drug dealers involved and said that Cooper acted as the "drop-off man" for "Dave" (Wallace) and his associates. Another confidential informant told police that Cooper was selling drugs.
 
 
 29
 On December 22, 1991, acting on this information, Lt. Koger instructed officers to place 3701 Mason under surveillance. On December 28, 1991, the police observed a burgundy Pathfinder parked by the house, which had not been present the day before. A man left the house and drove away in the Pathfinder. Police officers stopped the car and conducted a protective sweep, which produced various cocaine paraphernalia. They also found an auto-shop receipt for a burgundy Camaro Z-28 registered to Jerome Cooper on which was written the phone number to Wallace's beeper. The officers interrogated the driver, one Martin Real, who said the car belonged to Wallace. The officers released Real who began walking in the direction of Wallace's house. Lt. Koger followed by car.
 
 
 30
 As Lt. Koger neared the house, a different car drove into the driveway. Lt. Koger recognized the driver as Jerome Cooper, someone he had arrested before. Cooper apparently recognized Lt. Koger and quickly drove away. Officers did not attempt to follow him. Knowing Cooper was a drug dealer and fearful that Cooper would notify the house's occupants of the police surveillance, Lt. Koger decided to approach the house. Undercover Officer Felicia Williams knocked on the door. She heard someone call out "wait a minute." The officers heard the door lock. The officers then heard a commotion inside. One officer yelled that the occupants had seen the police. An officer at a side door saw people running into the basement. Believing that evidence was being destroyed, Lt. Koger instructed the officers to enter the premises. Inside the house, officers observed cocaine and other items, including an empty handgun holster, whereupon they conducted a protective sweep. The sweep produced cocaine, a large quantity of cash and other drug paraphernalia. The officers arrested Hicks and Wallace who were in the house. Officers obtained a search warrant and searched the house finding between 1700 and 1800 grams of powder cocaine and crack.
 
 
 31
 Defendants first argue that the warrantless entry was unlawful because the officers lacked probable cause to believe that drugs were in the house. Second, defendants argue that exigent circumstances did not exist because the officers had ample time to obtain a warrant. Third, defendants argue that even if the circumstances were exigent, the officers created that exigency and should not be excused by it.
 
 
 32
 The District Court found that the officers had reason to believe the house was occupied because of the traffic of cars, including Wallace's, and noted that Wallace had not been seen outside of the house. Joint App. at 279. The court also found reasonable grounds to believe that drugs were present in the house noting that it was Saturday, the Pathfinder had been present, the numerous call-ins, and the observation of Cooper, a known associate of Wallace. Joint App. at 279. Finally, the court found that the officers had reason to believe that drugs would be destroyed after Cooper recognized Lt. Koger.
 
 
 33
 We agree with the District Court's analysis and hold that exigent circumstances excused the officers' failure to obtain a warrant before entering Wallace's house. We have considered and concluded that our determination is consistent with the cases cited by defendants in support of their suppression motion. In United States v. Radka, 904 F.2d 357 (6th Cir.1990), this Court reversed a trial court's finding of exigent circumstances. That case was factually similar to the one at hand: police officers placed a suspected drug house under surveillance, arrested a man leaving the premises with drugs in his car, and subsequently entered the house without a warrant because the officers feared the occupants would learn of their surveillance and destroy the evidence. This Court held that exigent circumstances did not exist because the officers did not have a reasonable basis to believe that the destruction of evidence was imminent. 904 F.2d at 362, 363. The primary factor relied on by the court was that the occupants of the suspected house were unaware of the officers' investigation. The house under surveillance was on a rural road with substantial foliage surrounding it which, the court concluded, made it impossible for the occupants to see the police officers' activities. Id. at 362. The court also noted that the warrantless entry of the house occurred at least an hour after the officers decided to enter the house. Id. at 363. In this case, by contrast, a known associate of Wallace recognized Lt. Koger, which prompted the officers to approach the house immediately. Thus, the officers here were justifiably concerned that the occupants knew or would soon learn of their presence, and would attempt to destroy the drugs. At that point, the circumstances became exigent. See United States v. Socey, 846 F.2d 1439 (D.C.Cir.), cert. denied, 488 U.S. 858 (1988), cited in Radka, 904 F.2d at 362.
 
 
 34
 Defendants also cite Ogbuh, 982 F.2d 1000, for the proposition that the police cannot avoid a warrant by creating exigent circumstances. There, police used an informant to make a controlled delivery of drugs to suspects in a hotel room. Once the informant was inside the room, officers believed they heard the sound of drugs being destroyed and entered the hotel room without a warrant. In finding no exigent circumstances, this Court stressed that the officers could have delayed the delivery until a warrant was obtained and thus the officers completely controlled the timing of the sting. Id. at 1004. Here, however, the officers were involved in an ongoing surveillance not a targeted transaction. They did not plan the incident that created the exigency.[3] Moreover, this conclusion is not affected by the time between the existence of probable cause and the officers' entry into the house. "[T]he officers 'were conducting an ongoing investigation, and were not required to seek a warrant as soon as they had probable cause to suspect a conspiracy to distribute cocaine.' Instead, police officers reasonably could wait until they gathered additional evidence of the conspiracy or for further charges." Sangineto-Miranda, 859 F.2d at 1509 (quoting United States v. Palumbo, 735 F.2d 1095, 1097 (8th Cir.), cert. denied, 469 U.S. 934 (1984)). We conclude that the officers had probable cause and acted under exigent circumstances and, therefore, did not violate defendants' Fourth Amendment rights.
 
 IV.
 
 35
 Wallace also appeals the District Court's order denying his motion to suppress evidence relating to a second conviction. This conviction arose from Wallace's conduct while the first indictment was pending and he was free on bond. This second indictment charged Wallace with possession with intent to distribute 238 grams of crack cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). Wallace moved to suppress the evidence, which was seized from his vehicle, on the ground that the officers had neither a warrant nor probable cause to stop and search the vehicle. The court denied the motion.
 
 
 36
 The following facts are not in dispute.[4] A confidential informant, who has consistently provided reliable information, told Flint police that on February 18, 1993, Wallace would make a delivery of a substantial quantity of crack cocaine at 380 E. Dayton in Flint, Michigan. The informant said that Wallace would be driving a blue van. Officers conducted surveillance of the Dayton Street address during which they observed Wallace and a companion arrive in a blue van. Wallace approached the house but left when nobody answered. Suspecting that Wallace had identified the police officers, the officers decided to stop the van. They asked Wallace and his companion to step out of the van. The officers also had information from Lt. Koger, including the pending charge against Wallace for drug and firearm offenses, to believe that Wallace was armed and dangerous. Because the van windows were heavily tinted, the officers could not see inside to determine whether other persons were in the van. One of the officers then opened the van's rear door and observed a Kentucky Fried Chicken bag. The bag had a tear through which the officer saw a clear plastic bag containing what appeared to be crack cocaine. Joint App. at 186. The drugs were seized.
 
 
 37
 In reviewing a district court's denial of a suppression motion, this Court views the evidence in the light most favorable to the government. United States v. Garza, 10 F.3d 1241, 1245 (6th Cir.1993). The decision will be affirmed on appeal if proper for any reason. United States v. Lane, 909 F.2d 895, 897 (6th Cir.1990), cert. denied, 498 U.S. 1093 (1991). Police officers may conduct a warrantless investigatory stop of a vehicle without probable cause. Garza, 10 F.3d at 1245. Such a stop is proper if law enforcement officers are aware of specific and articulable facts giving rise to a reasonable suspicion of illegal activity and the intrusion into the suspect's personal security is reasonable in scope under the circumstances. Id. The facts creating reasonable suspicion may be based on an informant's tip. Id. In reviewing a challenged investigatory stop, "the totality of the circumstances--the whole picture--must be taken into account." Lane, 909 F.2d at 897 (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)). If officers have reason to fear for their personal safety while conducting an investigatory stop, they may order the occupants from the vehicle and inspect the vehicle for additional occupants. Garza, 10 F.3d at 1246.
 
 
 38
 Based on the information gained from the informant and the corroborative events observed by the officers, the officers had a reasonable suspicion that the van was being used to transport narcotics. Thus, the stop of the vehicle was proper. Further, because they had reason to believe that the occupants may be armed, the officers were entitled to remove Wallace and his companion from the van and check for further occupants. Due to the officers' inability to see through the tinted windows, they were entitled to open the rear doors of the van to ensure that nobody else was inside. See Garza, 10 F.3d at 1246 (upholding officers' climbing on to step of truck to peer inside for additional occupants during investigatory stop). At that point, the drugs were plainly visible to the officers and properly seizable. We conclude, therefore, that the District Court did not err in denying Wallace's motion to suppress the evidence seized from his van.
 
 V.
 
 39
 For the reasons stated above, the defendants' convictions and sentences are AFFIRMED.
 
 
 
 [1]
 We also note that the Plea Agreement entered into by Morgan states that any motion for downward departure shall be limited to Sec. 5K1.1 of the Guidelines and shall not be made pursuant to 18 U.S.C. Sec. 3553(e), the latter, according to the Plea Agreement, being necessary for a departure below the statutory minimum. Joint App. at 85. We do not decide whether the Plea Agreement, by itself, waived Morgan's right to argue the departure issue. See United States v. Smith, 918 F.2d 664, 669 n. 1 (6th Cir.1990), cert. denied, 498 U.S. 1125 (1991) (holding that understanding in plea agreement that no downward adjustment would be granted did not waive right to appeal issue where agreement did not expressly waive that right). Rather, we view the Agreement as supporting our conclusion of waiver because it indicates that the government's limited departure motion came as no surprise to Morgan
 
 
 [2]
 The primary source of the facts surrounding the warrantless entry into the house is Lt. Koger's affidavit submitted to the court, to which the parties stipulated
 
 
 [3]
 The situation in the present case would be more analogous to Ogbuh if there were evidence that Lt. Koger intended to be seen by Cooper. However, defendants stipulated to Lt. Koger's affidavit, which indicates that Cooper's recognition of Lt. Koger was unintended. Furthermore, the trial court recognized this concern and apparently found that Lt. Koger did not intend to be seen. Joint App. at 280
 
 
 [4]
 Wallace and the government submitted various documents in support of and in opposition to the suppression motion. These documents included testimony by an arresting officer given at the preliminary examination, a police report, and affidavits from Wallace and a police officer. Wallace does not dispute any facts contained in these exhibits. See Wallace's Second Brief at 8