301 F.Supp.2d 1306 (2004)
UNITED STATES of America
v.
Marnail WASHINGTON
No. CR. 03-57-N.
United States District Court, M.D. Alabama, Northern Division.
February 2, 2004.
Barry Elvin Teague, Federal Defender, Montgomery, AL, for Marnail Washington (1), defendant.

OPINION
MYRON H. THOMPSON, District Judge.
On December 19, 2003, this court sentenced defendant Marnail Washington to 481 months, or over 40 years, 30 years of which are for two counts of possessing a firearm in connection with a drug trafficking offense in violation of 18 U.S.C.A. § 924(c). This statute provides for a mandatory sentence of not less than five years for the first conviction, and a mandatory enhanced sentence of not less than 25 years for a "second or subsequent conviction." These sentences must run consecutive to each other and to all other sentences. Washington objected to the imposition of a 30-year sentence for these two counts on the ground that he had no criminal record, and thus that this conviction was not a "second or subsequent conviction." He also objected on the grounds that the sentence is too harsh. However, for the reasons that follow, the court had no choice but to sentence Washington to 30 years on these two counts, for a total *1307 term of more than 40 years. With this opinion, entered after sentencing, the court explains in more detail the reasons for the sentence and its implications for the federal criminal justice system.

I. Background
On February 7, 2003, police responded to a report of a fight at a high school in Montgomery, Alabama. School officials told the police that the people sitting in a white truck in front of the school were involved in the fight; Washington was in the white truck. The police ordered Washington to exit the vehicle and began to search him for weapons, but Washington began to flee; he was caught and arrested. The police found 33 grams of cocaine base (crack cocaine) in his pockets and a loaded Beretta 9mm semiautomatic pistol, along with a round of ammunition, in the middle console of the front seat of the truck. He was released from state court on bond pending further proceedings.
On February 13, police executed a "no knock" search warrant at 111 Canna Drive in Montgomery. The warrant was based on tips from a confidential informant who had made two drug buys at the house. When the police entered, someone shot at them. Police officer Jonathan Jordin's ballistic shield was struck by a bullet, and the shield shattered and injured his face. The officers returned fire into the house and then secured the residence. They found five people in the house, including Washington, who was in a back bedroom. Washington had crack cocaine in his pants pocket. The officers found an assault rifle and a semi-automatic handgun near the windows by the front door, two additional assault rifles on the floor in the hallway, and a Ruger handgun in a front bedroom. They also found additional crack cocaine in the toilet in the bathroom.
Washington pled guilty to five counts: one count of possession with intent to distribute five grams or more of cocaine base within 1,000 feet of a school (21 U.S.C.A. §§ 841(a)(1) and 860(a)); one count of possession of a firearm within 1,000 feet of a school (18 U.S.C.A. §§ 922(q)(2)(A) and 924(a)(4)); one count of possession with intent to distribute 50 grams or more of cocaine base (21 U.S.C.A. §§ 2 and 841(a)(1)); and the two counts of possession of a firearm in relation to a drug trafficking crime (18 U.S.C.A. § 924(c)). In exchange, the government agreed to recommend a three-level reduction in his offense level for "acceptance of responsibility" and a sentence at the bottom of the applicable guideline range.

II. Discussion
Before being sentenced in this case, Washington had never before been convicted of or charged with a violation of § 924(c). In fact, he had never been convicted of or charged with any crime. Thus, common sense would seem to dictate that he would not be eligible for an enhanced sentence for a "second or subsequent offense" under § 924(c). Indeed, for many years courts interpreted the enhancement provision of the statute as applying to only recidivist offenders. See Deal v. United States, 508 U.S. 129, 139-43, 113 S.Ct. 1993, 2000-02, 124 L.Ed.2d 44 (1993) (Stevens, J., with whom Blackmun and O'Connor, JJ., join, dissenting) (describing judicial interpretations of § 924(c) from 1968 until 1993).
However, in 1993 the Supreme Court held in Deal v. United States that "second or subsequent conviction" meant a finding of guilt, rather than the entry of a final judgment of conviction, and that a first sentence does not have to become final prior to a second one in order for the second one to count as a "second or subsequent offense." In Deal, the defendant had committed six different armed robberies on six different dates and was charged *1308 with all of those crimes at the same time. The Court reasoned that "simply because [the defendant] managed to evade detection, prosecution, and conviction for the first five offenses and was ultimately tried for all six in a single proceeding" did not mean that the sentence was "`glaringly unjust.'" 508 U.S. at 137, 113 S.Ct. at 1999. The Court also rejected the idea that its interpretation was inconsistent with Congress's intent of punishing recidivists, stating that Congress's intent was unknowable and irrelevant because the text was clear. Id. at 136, 113 S.Ct. at 1999.
The holding of Deal squarely controls this case. Washington's two convictions for violating § 924(c) are separate "findings of guilt," and thus the conviction for one of the two § 924(c) counts is a first conviction and the conviction for the other count is a "second or subsequent" conviction.
Some courts have held that a defendant cannot be convicted for two violations of § 924(c) when the defendant possesses two guns and two kinds of drugs all simultaneously and all in the same location, United States v. Johnson, 25 F.3d 1335 (6th Cir.1994), rev'd on other grounds, 529 U.S. 53, 120 S.Ct. 1114, 146 L.Ed.2d 39, or when the two guns are linked to the same underlying drug conspiracy, United States v. Hamilton, 953 F.2d 1344 (11th Cir.1992); United States v. Anderson, 59 F.3d 1323, 1325 (D.C.Cir.1995). However, in this case Washington pled guilty to possessing different guns in connection with two different quantities of drugs in separate locations and on separate occasions six days apart. Thus, he can be convicted of two counts of violating § 924(c), and under Deal the conviction for the second count is "subsequent" to the conviction for the first.
Thus, this court had no choice but to sentence Washington to five years of imprisonment on the first § 924(c) count and to 25 years of imprisonment on the second count, with those 30 years running consecutive to the 10-year sentence required for the other three counts.[1]
Washington is 22 years old and, before this sentence, had no criminal history. If he gets time off for good conduct, he will be in prison until he is in his late 50s and, if he serves the entire sentence, until he is 62. In strictly monetary terms, his imprisonment will cost the taxpayers approximately $900,000,[2] but the cost to him and *1309 to his family will be incalculable. His infant child will grow up without a father, and, before Washington is released, it is reasonably likely that his now-infant child will have his own children who will by then be in the difficult teenage years, if not approaching young adulthood, without their grandfather. Washington may be released before his death, but from the point of view of a 22-year old, 40 years is essentially a life sentence. Society generally reserves such harsh sentences for its most dangerous or incorrigible offenders, such as murderers and career offenders. This is because locking a young man away for his entire adult life does not serve a rehabilitative or deterrent function, as such a long sentence removes the incentive for reform and the hope that the prisoner will go on to live a productive life. As a punitive measure or a means of incapacitating Washington, Washington's sentence is grossly disproportionate to his crimes. While Washington broke the law and should be punished, even severely, a 40-year sentence is shockingly harsh given the nature of his offenses and his lack of criminal history. Indeed, this sentence is the worst and most unconscionable sentence the undersigned has given in his 23 years on the federal bench.
The irrationality of this sentence stems in part from the Supreme Court's interpretation of "second or subsequent conviction" in Deal. If it were a matter of first impression, this court would interpret the ambiguous statutory language narrowly. As a policy matter it does not make sense to punish a defendant, like Washington, who has no criminal history, as a recidivist offender. Under Deal, Washington is treated the same as a defendant who served five years for a first § 924(c) conviction, then returned to a life of guns and drug dealing upon release. By contrast, while Washington certainly displayed ongoing poor judgment by continuing to deal drugs and carry guns between February 7 and February 13, and while he certainly deserved severe punishment, his behavior is simply not anywhere near as culpable as that of a hardened repeat offender.
This sentence is also unjustifiable because it so arbitrary. If Washington had been charged with one underlying drug conspiracy rather than with two separate counts of possession with intent to distribute, he could only be charged with one violation of § 924(c). United States v. Hamilton, 953 F.2d 1344 (11th Cir.1992). Conversely, if he had been apprehended carrying drugs and a gun multiple times during the week of February 7, 2003, he could be charged with even more counts of § 924(c) and could face 65 or more years in prison. In short, the sentence bears no rational relationship to Washington's crime.
The word "draconian," meaning harsh, severe, or cruel, derives from Draco, the name of an Athenian lawgiver who was assigned to codify the laws so they would be consistent and would put people on notice of what was illegal. Draco accomplished this by making death the punishment for even the smallest offense. As was the case in the 7th century B.C., codification and consistency do not ensure justice. When the law denies judges any discretion to tailor sentences to individual defendants, draconian sentences are the result.
The court recognizes that this opinion will not help Washington. However, should Congress decide one day to revisit § 924(c), the devastatingly unjust impact of this statute, as now written, on the life of one human being, on his family, and on *1310 society as whole is a matter of open and public record in the form of this opinion.
NOTES
[1] Counts 1, 3, and 4 were grouped together under U.S.S.G. § 3D1.2(c) and (d), and the offense level for the group was the highest offense level of any of the counts. The total amount of drugs in counts 1 and 4 was 190.79 grams of cocaine base; under U.S.S.G. § 2D1.1(c)(3), this was assigned a base-offense level of 34. This is higher than the maximum possible offense level for count 3, so all three counts were assigned a base-offense level of 34. Under U.S.S.G. § 3A1.2(b), Washington's offense level was increased by 3 because he "or a person for whose conduct the defendant is otherwise accountable" assaulted a police officer by shooting at the police when they entered the residence at 111 Canna Drive. On the government's motion, three levels were subtracted under U.S.S.G. § 3E1.1(a) and (b) for acceptance of responsibility. Also on the government's motion, Washington was eligible for a two-level downward departure for substantial assistance under U.S.S.G. § 5K1.1. Thus, the total offense level for these three counts was 32. Washington's criminal history category was I since he had no criminal history. Thus, the guideline range was 121-151 months. Consistent with the plea agreement, the court sentenced Washington at the bottom of this range, to 121 months. The court allocated 120 months, or 10 years, to the two drug counts, and one month to the count for possession of a firearm within 1000 feet of a school.
[2] The Bureau of Prisons places the cost of incarcerating a federal prisoner at $22,517 for fiscal year 2002. Federal Bureau of Prisons, Operations Memorandum, Cost of Incarceration, September 23, 2003, available at http://www.bop.gov/progstat/om015_03.pdf. $22,517 a year for 40 years is $900,680. This figure is not adjusted for inflation.